NATIONAL CONDUIT MANUF'G CO. v. CONNECTICUT PIPE MANUF'G CO.

(Circuit Court, D. Connecticut. April 1, 1896.)

No. 844.

1. PATENTS—ASSIGNMENT BY PATENTEE—ESTOPPEL.

The foundation of the estoppel against a vendor patentee is the fact that he has received and retained a valuable thing in consideration of the statements contained in the application for, or specification of, the patent. Therefore, when an assignment is made pending the application for a patent, it is immaterial whether or not the vendor may have made representations to the purchasers concerning the probability of obtaining a patent. Nor is it material that the purchasers knew that the thing sought to be patented was old, when they understood that the patent was sought for a new application and use of it.

2. SAME—VOID CLAIMS—CONCEALMENT.

The fact that the claim of a pending application is void when an assignment is made, and has been so held by the patent office, does not affect the estoppel of the vendor, in respect to an amended claim subsequently allowed, where the purchasers were ignorant of the rejection of the claim, and the fact was concealed from them by false statements of the applicant.

3. SAME.

Payment, by the assignees of a pending application, of their note for one of the deferred installments of purchase money, after the knowledge of the rejection of the claim, and the vendor's concealment thereof from them, does not affect the estoppel against him. They have a right to elect between the remedy by repudiation of the fraud, or by ratification and estoppel.

4. SAME—RIGHT OF ASSIGNEES TO AMEND APPLICATION.

An applicant for a patent assigned "all rights under said letters patent that may hereafter be granted upon and by virtue of said application and any extension or reissue of the same." At the time of the assignment the claim had been rejected. *Held*, that the assignees had a right to amend to the same extent as from a surrender and reissue of a patent, and that the assignor was estopped in respect to a patent afterwards issued, and embracing such amended claims.

5. SAME—ESTOPPEL AGAINST CORPORATION.

The estoppel against the assignor of a patent operates against a corporation subsequently formed by him, and which is entirely owned and controlled by him. The corporation will be estopped, even if another party has a substantial interest therein, where it appears that at the time of acquiring his interest he had known of the patent and its assignment,

and had been associated with the assignor in the line of business to which the patent relates.

Warner & Noble, for complainant.

George D. Seymour and John K. Beach, for defendant.

TOWNSEND, District Judge. This is a bill for infringement of patent No. 395,584, for conduit for electric wires or cables, granted January 1, 1889, to Edward H. Phipps, assignor to Edward S. Perot and James P. McQuaide. The facts bearing on the issues raised are as follows: The patentee is the president, treasurer, and chief stockholder of the defendant corporation. It and its predecessors have, since 1865, continuously manufactured sheet-iron, cement-lined pipe, identical in structure with that now alleged to infringe said patent. The use of said pipe, however, was originally limited to the conveyance of water. It is now extensively manufactured, both by complainant and defendant, as a conduit for electric wires. In July, 1887, said Phipps received a large order for said pipe from the Phœnix Company to be used in the construction of an electric subway. About this time he consulted a patent solicitor as to the possibility of obtaining a patent for the use of such pipe for electrical conduits, and, as incident thereto, for a certain bridge construction thereof. While this application was pending he formed a partnership, in August, 1882, with said Perot and McQuaide (now the president, and secretary and treasurer, respectively, of the complainant corporation); he agreeing to contribute the patent on said pending application, if allowed, and said order, and certain machinery. Shortly afterwards said Phipps retired from said firm, the other members paying him, for his share therein, a certain sum in cash, and giving their notes for the balance of the purchase price; Phipps retaining said application as security for the payment of said notes. By a subsequent agreement the notes were surrendered, upon the payment of a certain sum, the application was assigned to McQuaide and Perot, and they organized the complainant corporation, and continued the business of manufacturing said conduits. Some months before Phipps retired from said firm, said application was rejected by the patent office, upon citation of anticipations; and, although Phipps knew this fact, he did not communicate his knowledge thereof to either Perot or McQuaide, but wrote them that his patent solicitor "has heard from Washington, and he thinks things look very favorable." In this condition of affairs, Phipps agreed to assign said application, "still pending in his name." Perot and McQuaide claim that they did not then know that said application had been rejected, and they made no inquiries in reference to it, as the prosecution of the application had been wholly intrusted to Phipps. They knew, however, before entering into the original partnership, that the pipe manufactured by Phipps, and contracted for by said Phœnix Company, and claimed in said application for electric conduits, had been used for many years for water pipe. The evidence shows that all the parties understood that Phipps expected to be able to obtain a patent which would cover the use for electrical conduits of the pipe which they proposed to manufacture. Perot and McQuaide further

claim that they considered said application as of great value, and that without it they would not have paid a dollar for Phipps' interest in the partnership.   It appears that they settled the last one of their notes, for $1,000, given therefor, by a shipment of pipes to Phipps after they knew that the application had been rejected.

In disposing of the various legal questions herein presented, it is unnecessary to determine the truth of the claims made by complainant and denied by defendant.   It may be assumed that the conduct of Phipps was incompatible with the trust relations existing between the parties, and that complainant might have had its remedy by an appropriate action for relief, brought upon a discovery of the facts. These transactions occurred, and Perot and McQuaide knew of the rejection of said application, as early as May, 1888.   But although Perot says he complained to Phipps' father, in 1889, of "the dishonorable manner in which his son was acting," and said "that he had attempted to infringe upon a patent which he had gotten up and sold to us," yet Perot continued to write friendly letters to Phipps long after May, 1888, said note for $1,000 was accepted as aforesaid, and fraud is not alleged in this action.   Phipps, after retiring from said partnership, manufactured and sold pipe for electrical conduits identical with that which he had originally manufactured for water pipe, and in 1892 he organized the defendant corporation.   The defendant, inter alia, denies the validity of said patent.   Counsel for complainant contend that, by reason of the foregoing facts, defendant is estopped to make said defense.   To this claim defendant makes several answers, which will be considered in their order.   It claims that it is not estopped, because there was neither a general representation of the validity of said application, nor any specific representation, other than a mere opinion upon a question of law, which neither Perot nor McQuaide ever attempted to investigate, and that they knew said pipe. as water pipe, was old.   But the foundation of the estoppel against a vendor patentee is the fact that he has received and retained a valuable thing in consideration of the statements contained in the application for, or specification of, the patent.   Babcock v. Clarkson, 11 C. C. A. 351, 63 Fed. 607.   It is therefore unnecessary that the vendee should prove other representations.   It is immaterial herein that the vendor may have made representations affecting the question as to the probability of obtaining a patent, because said patent afterwards issued.   It is immaterial that the parties knew such water pipe was old, provided they understood that the vendor claimed that its use for electrical conduits covered by said application was new, and the consideration was paid upon such understanding.   Such a sale is, in effect, upon the consideration of an agreement by the vendor that, whatever may be the status of the patent as to the public, he (the vendor) will not thereafter interfere with the vendee's rights in the invention covered thereby, during the life of said patent.   Irrespective, then, of the representations of Phipps, he is now estopped to deny the statement in said original application, that his "invention consists in a conduit for electric wires or cables, composed of a sheet-metal tube or shell, and a lining of cement therefor."

But counsel for defendant argues that at the time of the final assignment the citation of references showed that the first claim was void, and therefore there is no presumption of consideration received, or title conferred, as to said claim. But Perot and McQuaide were ignorant of the facts. The prosecution of the application was in Phipps' charge, and they were not called upon to make further inquiry after Phipps' statement that his solicitor had "heard from Washington, and he thinks things look very favorable." It is further claimed that they paid the last one of their notes after they knew the application had been rejected. Whatever might be the effect of such payment upon an action for fraud, there is nothing therein necessarily inconsistent with this claim of estoppel. They might reasonably have concluded that having paid all of said purchase price, except $1,000, their only way to secure the benefit of said patent was by the payment of said sum, to prevent further competition by Phipps. Defendant further argues that, even if it be assumed that Phipps did fraudulently conceal the rejection of said application, and did receive a large sum from Perot and McQuaide as the price therefor, yet that complainant has waived said fraud. But complainant had the right to elect between its remedy by repudiation for fraud, or by ratification and estoppel. And, if it elected to take the latter course, the payment of said note for $1,000 was a condition precedent to the assertion of such claim.

But perhaps the argument most strongly pressed against the defense of estoppel is based upon the claim that said "application was perverted to a different invention by false and unauthorized amendments made after the assignment." The facts bearing upon this question are as follows: After the final assignment to Perot and McQuaide, they appointed a solicitor to prosecute said rejected application. He amended by inserting a statement that, while insulated cast-iron pipes were old, "my invention consists essentially, in this regard, of a sheet-metal tube or pipe, lined with hydraulic or like cement, which is not only an electric insulator, but which also hardens under water, takes a permanent form," etc. The defendant contends that it is not estopped as to the first claim of the patent in suit, because that claim is nonidentical with the corresponding claim of the original application. The original first claim was as follows: "A conduit for electric wires or cables, consisting of a sheet-metal shell or tube, and a lining of cement therefor, substantially as set forth." The claim in suit is as follows: "A conduit for electric conductors, consisting of a sheet-metal shell or tube provided with a lining of hydraulic cement, substantially as described." The only material difference is in the limitation of the original "cement" to "hydraulic cement." The application originally, and as amended, covered "an improvement in underground conduits for electric wires or cables." Phipps expressly assigned "all rights under said letters patent that may hereafter be granted upon and by virtue of said application, and any reissue or extension of the same," and agreed to execute all instruments "needed to make sure and certain the rights and privileges granted to said Perot and McQuaide." The assignees, by said amendment, merely did what they would have had

a right to do under a surrender and reissue, and in fact the right to amend was the chief thing that remained in the rejected application which Phipps assigned. If it were a fact that Phipps had thereby been made to swear falsely that he was the first inventor of a sheet-metal pipe lined with hydraulic cement, it would be immaterial to the issue herein. But such was not the fact, for the amended application only stated that he was the first inventor thereof "in this regard,"—that is, in regard to the new use,—which statement was practically identical with that made in the original application.

Finally, defendant claims that the defendant corporation is not estopped by the acts of said Phipps. It is well settled that a corporation has a distinct personality of its own, and that it is not responsible for the personal acts of the majority of its stockholders. I had occasion to examine this question at length in Electric Ry. Co. v. Jamaica & B. R. Co., 61 Fed. 655, where the cases bearing on this question are cited. In the case at bar, of the 600 shares of stock, Phipps owns 500, and one Ward 95. Two other stockholders own the remaining 5 shares. It is doubtful whether Ward ever paid anything for his stock. The testimony of Phipps is indefinite on this point. But certainly there is no evidence that any one except Phipps and Ward ever paid value therefor. It appears that the defendant is merely a convenient medium through which said Phipps transacts his business. If it were necessary to the decision of this case, the court would have to find, from all the evidence, that the defendant was affected by the estoppel against Phipps. But, even if Ward has a substantial interest in said corporation, this would not prevent the operation of the estoppel. When it was organized, in 1892, he subscribed for his stock with notice that the patent in suit had issued to Perot and McQuaide, assignees of said Phipps. He had been the general manager and superintendent of the original firm, in which Phipps was a partner, and a partner with Phipps in the firm known as the Connecticut Pipe Manufacturing Company, and is the only person claiming to have a substantial interest in the defendant corporation. This corporation was organized for the purpose of constructing, among other things, electric light plants and conduits. I think, upon the state of facts herein, that either the corporation must be considered as a mere cover for the transaction of Phipps' business, or that the relations of Phipps and Ward to the corporation raise a presumption of such knowledge and privity of interest that it is bound by the estoppel against Phipps, or, at least, is not in a position where a court of equity should listen to it in an attack upon the validity of the patent.

The ingenious arguments of counsel for defendant have made it necessary to thus fully discuss the evidence herein. I do not consider, however, that the evidence as to fraud is material; and I do not find, upon the facts proved, that Phipps made either fraudulent statements or concealments. It is unnecessary to discuss the other questions raised herein. Infringement is sufficiently shown by competent expert testimony. Complainant has not been guilty of laches. The acts of the parties show that no reliance was put upon the claim for bridges, in said application. Upon the material facts, the con-

tract between the parties necessarily implied that Phipps would not, during the life of the patent, manufacture such pipe for electrical conduits. That this was the understanding of the parties not only appears from the evidence already considered, but is further supported by complainant's claim of right under said application, made in a notice to the city of Chicago that Phipps had no right to furnish it with electrical conduits, and by the agreement of Phipps to procure the pipe from complainant in order to fulfill said contract, and by letters written in 1889 to Perot by Daniel G. Phipps, the father and partner of Edward H. Phipps, assuring him that their firm would not infringe upon the rights purchased by the complainant company, and would make no pipe for electric light and telephone companies of any kind whatsoever, unless it should be water pipe. This promise, made in 1889 by the firm in which Phipps was a partner, and of which Ward was the superintendent and general manager, formulates the agreement as it was understood by the parties, and should be enforced by the court.

An injunction may issue, restraining the defendant from infringing said patent; such injunction, however, not to interfere with its manufacture or sale of water pipe.