STANDARD SEWING MACH. CO. v. LESLIE.*

(Circuit Court of Appeals, Seventh Circuit.   October 7, 1902.)

No. 831.

1. JURISDICTION OF STATE COURTS—INCIDENTAL CONSTRUCTION OF PATENT.
   An action by a patentee on a contract for royalties, to recover royalties on machines made by defendant, is within the jurisdiction of a state court, although the defendant, under a plea of the general issue, only undertakes to controvert plaintiff's evidence as to the construction of the patent, which is involved only incidentally and as a part of the contract.

2. PROCEEDINGS IN ERROR—EFFECT OF DECISION—LAW OF CASE.
   The decision of an appellate court on a question arising in a case is not only binding on the trial court, but is the law of the case in the appellate court itself on a subsequent writ of error or appeal.

3. SAME—RULE APPLIED.
   In reversing a judgment for defendant entered on a verdict directed by the court, the appellate court held that the evidence in the record introduced by plaintiff was sufficient on every issue to have justified a verdict in his favor, and that the line of evidence relied upon by defendant was incompetent under the issues. Held, that on a writ of error taken by defendant to review a judgment subsequently entered on a verdict for plaintiff, where plaintiff's evidence was the same and defendant introduced no evidence except such as had previously been held incompetent, the appellate court would not consider the instructions given or refused, since under its prior decision it would not have been error to direct a verdict for plaintiff.

4. SAME.
   The fact that in such case plaintiff withdrew all objection to the admission of the incompetent evidence does not entitle defendant to have it considered by the appellate court and given an effect different from that to which it is entitled under the law of the case as previously settled.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Leslie began this action in the superior court of Cook county, Ill., upon a contract executed by the parties on August 20, 1884. The cause was removed to the federal court, on the petition of the company, on the ground of diversity of citizenship.

The contract provided: (1) A prior contract is hereby rescinded. (2) A trustee, to whom Leslie has conveyed full title, shall hold all of Leslie's patents for improvements in sewing machines and patents on "the Rotary Shuttle Sewing Machine" for the benefit of the parties under the terms of this contract. (3) Foreign patents may be taken out at the expense of the company, and shall be the joint property of the parties. (4) The company releases Leslie's debt to it. (5) The company agrees to pay Leslie as royalty "upon each machine manufactured by it embodying the principles covered by Leslie's patents" 7½ cents for the first 100,000 machines and 5 cents for the excess. The royalties shall be paid in cash, and $1,000 thereof in advance. (6) Leslie "shall not be held to guaranty the validity of said patents or any of them or to protect said second party (the company) against infringements thereof or against actions brought against it for infringements, but all royalties hereunder shall cease upon the date of a decree of any

* Rehearing denied November 15, 1902.

court of competent jurisdiction declaring the invalidity of said patent or patents." (7) The company agrees to carry on the business with energy, "and shall make such number of machines as to keep the supply as nearly as practicable up to the demand of the trade, and this contract shall endure during the life of the patents issued in 1882 unless sooner terminated, as hereinafter provided." (8) The company "shall not be obliged to make Rotary Shuttle Sewing Machines like any model that has been or may be constructed or settled on as a standard, but it may from time to time make such changes as may seem to it expedient; but no such alteration or change shall relieve second party from the payment of royalties as herein provided so long as the machine made by it involves any of the essential principles covered by the patents of first party." (9) The company shall make monthly reports under oath. (10) The company "shall have the exclusive right to make and sell machines under said patents as above provided during the monthly statements." (11) The company "may terminate this contract upon giving written notice to first party, and notifying said trustee that it has no further interest in said patents, and that the same may be reassigned to first party." The declaration contained counts for the recovery of royalties, for damages for not making machines to the number required by the trade, and for damages for refusing to surrender the patents after demand. The company pleaded the general issue.

At the first trial Leslie proved the contract, his patents, the company's manufacture of a large number of machines like one or another of four models produced to the jury, refusal to pay royalty or to relinquish the patents, and introduced expert testimony tending to prove that each of the models embodied one or more of the essential principles covered by one or more of the patents. The company offered expert testimony to prove that none of the models embodied any of the essential principles covered by Leslie's patents, either in identical construction or mechanical equivalents. The court rejected the proffered evidence, charged the jury, in effect, that the company could not hold the patents and at the same time escape the payment of royalties by altering the form of its machines, and directed a verdict for Leslie. The judgment was reversed by this court in Sewing Mach. Co. v. Leslie, 24 C. C. A. 107, 78 Fed. 325.

At the second trial Leslie introduced substantially the same evidence as at the first. The company introduced a great deal of evidence to show the state of the prior art, and expert testimony to the effect that none of its models embodied any of the essential principles covered by the Leslie patents. The court charged the jury, in effect, that under the prior art there was no room for the application of the doctrine of mechanical equivalents to the company's models, and directed a verdict for the company. On a record that did not contain the proof made of the prior art, the judgment was reversed by this court in Leslie v. Sewing Mach. Co., 39 C. C. A. 314, 98 Fed. 827.

At this the third trial Leslie made out substantially the same case as before. The company exhibited the prior art quite fully; introduced expert testimony to the effect that in view of the prior art Leslie's claims must be limited strictly to the very means detailed, and that, so limited, they do not cover any of the company's models; and also produced evidence tending to show that the changes were made in good faith, and not merely to escape the payment of royalty. No evidence was introduced to sustain the counts of the declaration other than the one for royalty. At the end of Leslie's evidence in chief, and again at the conclusion of all the evidence, the company moved the court to dismiss the cause for want of jurisdiction. The company further moved the court to direct a verdict in its favor. The cause was submitted to the jury, who returned a verdict in Leslie's favor. The company duly excepted to the giving and refusal of various instructions.

The assignments of error present the questions of jurisdiction, of the propriety of refusing to direct a verdict, and of the correctness of instructions given and refused.

John Dane, Jr., and Charles S. Holt, for plaintiff in error.
James H. Teller and Charles K. Offield, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge, after making this statement of the case, delivered the opinion of the court.

If the state court had no jurisdiction, the federal court acquired none by removal, even though the defect was that the action should have been brought in the federal court in the first place. That the state court had jurisdiction of the subject-matter of the counts for wrongfully failing to make the required number of machines and for wrongfully refusing to surrender the patents after demand plaintiff in error does not controvert, but contends that since these counts, though not dismissed, were not supported by evidence, they cannot be considered; that the subject-matter of the remaining count was not within the jurisdiction of the state court; and that, as soon as this state of things became apparent, it was the duty of the federal court to dismiss the action. If it be conceded that jurisdiction depends solely on the count for royalties, nevertheless we think the motion was rightly denied. Plaintiff in error admits that if it and Leslie agreed on the construction of the patents the case of Albright v. Teas, 106 U. S. 613, 1 Sup. Ct. 550, 27 L. Ed. 295, would be decisive, but insists that their contention over the applicability of the prior art and its effect in limiting Leslie's claims transmutes the cause into one of exclusively federal cognizance. In any action upon contract for royalties, the plaintiff produces the contract, his patents, and the machines made by the defendant. The contract being proven, the question is, do the defendant's machines embody any of the essential principles covered by the patents? To determine this, it is necessary both that the patents and the defendant's machines be construed. Otherwise no intelligent comparison can be made. So the plaintiff introduces evidence on both points, but only to sustain his one contention, that the defendant has failed to pay a sum due under the contract. The interpretation of the patents as well as of the machines is necessary to a proper construction of the contract, but obviously is only incidental to that one purpose. The patents are construed, not as independent grants to which the defendant is a stranger, but as a part of the contract into which he entered. Now if, under a plea of the general issue, the defendant chooses to controvert the plaintiff's evidence only on the one point, and not on the other, how can it logically be said that the defendant's partial denial has changed the nature of the plaintiff's cause of action? A reduction of the contention to this form is, we think, its sufficient answer.

To solve the questions presented by the remaining assignments, it is necessary to understand the former decisions in this cause; for it is a familiar and entirely righteous rule that a court of review is precluded from agitating the questions that were made, considered, and decided on previous reviews. The former decision furnishes "the law of the case" not only to the tribunal to which the cause is remanded, but to the appellate tribunal itself on a subsequent writ or appeal. Roberts v. Cooper, 20 How. 467, 481, 15 L. Ed. 969: "There would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on its opinions, or speculate of chances from changes in its members."

In Sewing Mach. Co. v. Leslie, 24 C. C. A. 107, 78 Fed. 325, it was ruled that the court's charge to the effect that the company could not

refuse to surrender the patents and at the same time escape the payment of royalties by altering the form of its machines was erroneous, that the company was not limited to making machines employing the Leslie patents, and that royalties were to be paid only on such machines as did embody some essential principle covered by the patents. That ruling, right or wrong, was binding on the parties not only in the trial court, but also in this court in subsequent proceedings. The decision, however, did not undertake to say in advance what kind of evidence the company might use to support its denial of royalties due.

In Leslie v. Sewing Mach. Co., 39 C. C. A. 314, 98 Fed. 827, as already stated, the court charged the jury in effect that under the prior art there was no room for the application of the doctrine of mechanical equivalents to the company's models, and directed a verdict for the company. The judgment was reversed on a record that contained the plaintiff's case, but did not disclose the evidence of the prior art on which the trial court had ruled that the plaintiff's case was incontrovertibly overcome. The court said: .

"When a finding has been directed in favor of the defendant in a case, and the bill of exceptions, though not purporting to contain all the evidence, contains a statement of evidence in behalf of the plaintiff sufficient on every issue to have justified a verdict in his favor, the rule (that the bill of exceptions must contain all the evidence) manifestly ought not to apply, especially if it be apparent that the action of the court was the result of a misapprehension of the bearing and force of the proof adduced. It is plain that there was such an error in this case. Upon the evidence set out in the bill of exceptions the plaintiff was entitled to recover on one paragraph of the declaration a stipulated sum for each machine manufactured by the defendant, if those machines involved 'any of the essential principles covered by the patents.' The question was taken from the jury because in the judgment of the court, as stated in its charge, the claims of each of the patents 'are restrictive by the terms of the patents, and, in view of the clearly shown prior art, to such an extent that the doctrine of mechanical equivalents cannot be invoked in this case.' That was to treat the case as if there were no contract between the parties, and the question were simply of infringement by a wrongdoer. * * * The contract is explicit, and in our opinion excludes any inquiry into the prior art for the purpose of limiting the scope of the patents. It contains the express stipulation that Leslie 'shall not be held to guaranty the validity of said patents or any of them, or to protect said second party against infringement thereof, but all royalties hereunder shall cease upon the date of a decree of any court of competent jurisdiction declaring the invalidty of said patent or patents'; and it is further provided that the 'second party shall not be obliged to make rotary shuttle sewing machines like any model that has been or may be constructed or settled upon as a standard, but it may from time to time make such changes as may seem to it expedient; but no such alteration or change shall relieve the second party from the payment of royalties, as hereinafter provided, so long as the machine made by it involves any of the essential principles covered by the patents of the first party.' This last expression clearly means that changes or alterations which should introduce only equivalents of the original elements should not relieve the second party from the payment of the stipulated royalties, and like the other provision that all royalties should cease on the date of a decree declaring the invalidity of the patents is inconsistent with the proposition of the court that the doctrine of mechanical equivalents could not be invoked in the case. To the same effect in our former opinion we said: 'Leslie was unwilling to guaranty the validity of his patented inventions, or to protect the company in their use should they prove to infringe upon another's protected rights. This risk was assumed by the company, upon the condition, however, that the payment of royalty should cease when a competent court should declare the invalidity of the invention.'"

The company contends that a licensee has the same right as an alleged infringer to go into the prior art for the purpose of limiting the scope of the patent; that in the present case the prior art shows that the elements in Leslie's combinations were old; that the elements in the company's combinations come nearer to the prior art than to Leslie's; and that, Leslie's claims and the company's models being properly interpreted in the light of the prior art, there can be no valid insistence upon mechanical equivalency. On this the corollary is predicated that the expressions in the opinion that "the contract excludes any inquiry into the prior art for the purpose of limiting the scope of the patents" and "alterations which introduce only equivalents of the original elements do not relieve the company from the payment of the stipulated royalties" are mere dicta. On the contrary, these pronouncements lie at the heart of the decision. The bill of exceptions contained evidence for Leslie "sufficient on every issue to have justified a verdict in his favor." If this had not been decided to be so the directed verdict against him would have been allowed to stand. The bill of exceptions did not contain the evidence relating to the prior art, introduced by the defense. The court was therefore bound to presume that the strongest possible defense in that respect had been made, that the prior art showed that the elements in Leslie's combinations were old, that the elements in the company's combinations came nearer to the prior art than to Leslie's, and that, Leslie's claims and the company's models being properly interpreted in the light of the prior art, there could be no valid insistence upon mechanical equivalency. In this state of the record a reversal required the court to hold that a licensee stands on a footing different from an infringer's; that the infringer is not bound by the patentee's ex parte statement of his claims; that the licensee comes into contract relation with the claims; that, by the contract in this case, Leslie did not guaranty the validity of the patents nor agree to protect the company against infringements, but royalties should cease upon a competent court's decreeing the invalidity of the patents; that the company was therefore required to accept Leslie's claims as he made them or let them alone; that the prior art therefore could not be inquired into for the purpose of limiting the scope of the claims; and that therefore the use of machines which embodied mechanical equivalents of Leslie's claims as he made them would not relieve the company from the payment of the stipulated royalties. We think it clear that the criticised portions were far within the necessities of the decision. This construction of the contract left it open for the company on the last trial to introduce evidence, if it had any, that the machines in question did not employ the mechanical equivalents of Leslie's claims as he made them, the prior art being left entirely out of view. And if we were to agree with counsel that the reasoning is all wrong, and involves "an obvious inversion of logic," it would not change the result that such is the law of the case.

At the last trial Leslie again produced the contract, his patents, the machines made by the company, and expert testimony that, without taking the prior art into account, the machines embodied the mechanical equivalents of several of Leslie's claims as stated in the

patents. As decided on the last preceding writ of error, this made a case for Leslie "sufficient on every issue to have justified a verdict in his favor." The expert testimony for the company with reference to the interpretation of Leslie's claims and the company's machines, and the comparison of the two, was based wholly and explicitly upon the prior art as a foundation. The remaining evidence of the company was to the point that the changes were made in good faith and not merely to escape the payment of royalty. This was irrelevant. If the company had in fact abandoned the use of the Leslie patents, the reason was entirely immaterial. There was, therefore, under the former decision, no evidence that was legally sufficient to meet Leslie's case. Consequently there would have been no error in directing a verdict for Leslie. And so it becomes of no concern what instructions the court gave or refused.

The situation is not at all changed by the fact that, after the court had indicated that he would exclude all evidence touching the prior art, Leslie withdrew his objection, and the court thereupon allowed the evidence to go in. If Leslie had been defeated, manifestly he would be estopped to predicate error on the admission of the evidence. But the fact that he was willing to take his chances before the jury does not authorize the company to require us to give an effect to the evidence different from what it was entitled to under the law of the case.

In addition to the foregoing considerations, we are inclined to believe that, on the contract and the whole record, the right result has been reached, and that intermediate errors, if any, should therefore be disregarded. If the company wants to contest with Leslie on the footing of an infringer, let it reassign the patents and continue the making of its present models.

The judgment is affirmed.