SIEMENS–HALSKE ELECTRIC CO. v. DUNCAN ELECTRIC MFG. CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   October 3, 1905.)

No. 1,147.

1. PATENTS—INFRINGEMENT BY PATENTEE—ESTOPPEL BY ASSIGNMENT.

An assignment of a patent by the patentee estops him, not only to deny the validity of the patent, but also to invoke the prior art as a limitation of its claims as made and allowed. In a suit against him for infringement by the assignee, extraneous evidence is inadmissible, if there is no ambiguity or uncertainty in the language of the description and claims; and if there is uncertainty, outside evidence is admissible only to make clear what the applicant meant to claim and the government to allow, and not for the purpose of showing, even in the slightest degree, that the applicant had no right to claim, and that the government was improvident in allowing, what was in fact claimed and allowed.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 183.]

2. SAME—CORPORATION ORGANIZED BY PATENTEE.

A corporation organized by a patentee, who had assigned his patents, and others having full knowledge of the facts, who are largely the owners of its stock, is estopped to deny the validity of the patents, or to limit their claims by the prior art, to the same extent as the patentee.

Appeal from the Circuit Court of the United States for the District of Indiana.

Edward Rector and Drury W. Cooper, for appellant.

Robert H. Parkinson, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. The appellant, complainant below, brought this suit against Duncan, the Duncan Company, Cragg, and Brown, to restrain their alleged infringement of claim 3 of patent No. 550,-823, issued December 3, 1895; claims 3, 6, and 7 of patent No. 604,465, issued May 24, 1898; and claims 2, 3, 4, 5, 7, and 11 of patent No. 698,653, issued April 29, 1902.

These inventions were all made by Duncan, and related to electric meters. In March, 1899, Duncan began service for the complainant as an electrical engineer, and continued until March, 1901. His contract required him to assign to the complainant all inventions made by him during the term of his employment. In January, 1900, for $10,000, he assigned to the complainant, among numerous patents and applications therefor, the two first patents in suit and the pending application for the third and the inventions therein described. During Duncan's term of service with the complainant, and both before and after that time, and until March, 1902, Brown and Cragg were the complainant's patent attorneys, and had charge of patent matters between the complainant and Duncan. Shortly after Duncan left the complainant, which was in March, 1901, Duncan, Brown, and Cragg organized the Duncan Company to exploit the inventions of Duncan made subsequent to March, 1901, in the line of electric meters. The Duncan Company immediately made a contract with Duncan to issue to him one-half of the $100,000 capital stock and to pay him $3,600 a year for 10 years, in consideration of which he engaged to act as

general superintendent of the company's works for 10 years, to assign certain inventions and to allow the use of the name Duncan as a trademark. Brown was made president and Cragg treasurer. Brown and Cragg took $25,000 of the capital stock, and the remaining $25,000 was subscribed for by seven other persons. It does not appear but that each of these others had at the time full knowledge of the prior relations between Duncan and the complainant, Brown and Cragg and the complainant, and Duncan and Brown and Cragg, and of the assignments from Duncan to the complainant.

In the view we take of the case it is needless to cumber these pages with the claims in suit and the specifications relating thereto, or with a description of the meters alleged to be infringements, for there is no doubt that in the defendants' meters there is either identity with, or mechanical equivalency of, the complainant's inventor's claims "as he made them, the prior art being left entirely out of view" (Standard Sewing Machine Co. v. Leslie, 118 Fed. 557, 561, 55 C. C. A. 323); and that, on the other hand, if the prior art is in the case, there is no infringement of many, if not all, of the claims. In the trial court, the complainant was denied relief against Duncan and the Duncan Company (Brown and Cragg were not served with process and did not appear), because there was found to be no infringement in view of the prior art.

1. As to Duncan. The claims in suit were presented to the government for allowance, and were allowed, as Duncan made them. He thereby asserted that the inventions described in these claims were exclusively his property. The government, by allowing the claims and issuing the patents, granted him the franchise to exclude all others from practicing the inventions without his consent, and certified to his ownership of what he claimed as his property. True, the grants imported only prima facie validity as against strangers thereto. They could defend on the ground that what purported to be described in the grant as property, had no existence (want of invention), or that the title to the property was in themselves (the public) by prescription (want of novelty by reason of prior publication or use), or that, although they were occupying a part of the property within the stated metes and bounds of the grant, the title to that part was in themselves (limitation by the prior art). The defendants admit that parties who come into relation with an invention described in a patent, whether by deed or lease or other form of contract, stand on a different footing from that of strangers. They admit that there is some sort of an estoppel, but insist that it does not apply in this case. The contentions may be stated and answered quite summarily.

Granting, they say, that Duncan is estopped from asserting that the claims are void for lack of invention or lack of novelty, he may nevertheless bring in the prior art to limit the claims and thus defeat the suit. Why one defense and not the other? They are of as like blood as brothers. One is somewhat larger than the other, is all. Lack of novelty defeats the complainant's title to the whole of the property within the metes and bounds of the claims. Limitation destroys his title to a part. If a stranger were occupying a part, but

not all, of the property described in the deed, he could answer, "I am not concerned with your title to the residue, but what I am occupying is not yours." The contention that Duncan can do likewise brings the estoppel to nothingness.

When these patents were issued, the public were strangers to the grants. The grant to Duncan was the right to exclude the public from using the inventions described in the claims, subject to the right of the public to strike down, if they could, the claims in whole or in part. The defendants assert that all that the complainant acquired by the assignment was the franchise to exclude, which had been granted to Duncan. This may be taken as true so far as the rights of strangers are concerned. But Duncan's assignment, in fact and likewise by its very terms, was a conveyance not only of the franchise to exclude strangers, but was also a conveyance of the inventions described in the claims. The right of Duncan to the inventions, if they were inventions, existed prior to, and continued independently of, the issuing of the patents. Fuller v. Berger, 120 Fed. 274, 56 C. C. A. 588, 65 L. R. A. 381; Victor Talking Machine Co. v. The Fair, 123 Fed. 424, 61 C. C. A. 58. If, in the face of his sale of the inventions described in the claims, as existent property into the possession of which he purported to induct his grantee, he be permitted to defeat his grantee's right of possession of the whole or a part on the strength of a prior title outstanding at the time of the grant, he would be put on the same footing as a stranger, and the estoppel by deed would again be reduced to nihility.

The defendants say that it does not appear that Duncan deceived or misled the complainant with respect to the total or partial invalidity of the claims as made in the patents. But the estoppel relied on is not by 'conduct, but by deed—an estoppel that, to be of any appreciable weight or value, must be deemed equivalent to an engagement by the grantor to refrain from using what is described and claimed as his inventions in the patents assigned.

In our judgment the reason of the case leads to the conclusion that, between contracting parties extraneous evidence is inadmissable if there is no ambiguity or uncertainty in the language of the description and claims, and that, if there is uncertainty, outside evidence is admissible only to make clear what the applicant meant to claim and the government to allow, and not for the purpose of showing, even in the slightest degree, that the applicant had no right to claim and that the government was improvident in allowing what was in fact claimed and allowed. And the conclusion accords, we think, with the weight of authority. See Trotman v. Wood, 16 C. B. (N. S.) 479; Clark v. Adie, L. R. 2 App. Cas. 423; Chambers v. Chrichley, 33 Beavan, 374; Crossley v. Dixon, 10 H. of L. Cas. 293; United States v. Harvey Steel Co., 196 U. S. 310, 25 Sup. Ct. 240, 49 L. Ed. 492; Faulks v. Kamp (C. C.) 3 Fed. 898; Consolidated Co. v. Guilder (C. C.) 9 Fed. 155; Underwood v. Warren (C. C.) 21 Fed. 573; Parker v. McKee (C. C.) 24 Fed. 808; Pope Mfg. Co. v. Owsley (C. C.) 27 Fed. 100; American Paper Barrel Co. v. Laraway (C. C.) 28 Fed. 141; Adee v. Thomas (C. C.) 41 Fed. 342; Woodward v. Boston

Lasting Mch. Co., 60 Fed. 283, 8 C. C. A. 622; Babcock v. Clarkson, 63 Fed. 607, 11 C. C. A. 351; Natl. Conduit Co. v. Conn. Pipe Co. (C. C.) 73 Fed. 491; Alvin Mfg. Co. v. Scharling (C. C.) 100 Fed. 87; Standard Sewing Mch. Co. v. Leslie, 118 Fed. 557, 55 C. C. A. 323; Frank v. Bernard (C. C.) 131 Fed. 269. Compare, contra, Noonan v. Chester Park Athletic Club, 99 Fed. 90, 39 C. C. A. 426; Smith v. Ridgely, 103 Fed. 875, 43 C. C. A. 365.

2. As to the Duncan Company. The facts recited in the statement of the case satisfy us that the company is simply an incorporation of Duncan. Therefore the corporation should be enjoined, just as its officers, directors, and stockholders would be, if, as individuals and without resorting to the corporate form, they were aiding and abetting Duncan in the infringement. Telegraph Co. v. Himmer & Casey (C. C.) 19 Fed. 322; Parker v. McKee (C. C.) 24 Fed. 808; Burr v. Kimbark (C. C.) 28 Fed. 574; Burdsall v. Curran (C. C.) 31 Fed. 918; Woodward v. Boston Lasting Mch. Co., 60 Fed. 283, 8 C. C. A. 622; Natl. Conduit Co. v. Conn. Pipe Co. (C. C.) 73 Fed. 491; Daniel v. Miller (C. C.) 81 Fed. 1000; Alvin Mfg. Co. v. Scharling (C. C.) 100 Fed. 87.

The decree is reversed, with the direction to enter a decree in the complainant's favor for an injunction and an accounting.