## CHUTE v. WISCONSIN CHEMICAL CO.

(Circuit Court, E. D. Wisconsin. January 23, 1911.)

1. EQUITY (§ 65*)—APPLICATION OF MAXIMS—"HE WHO COMES INTO EQUITY MUST COME WITH CLEAN HANDS."

The equitable maxim, that "he who comes into equity must come with clean hands," does not reach a case where the cause of action is meritorious, and where, subsequent to suit brought, the complainant has been guilty of reprehensible conduct, but which does not go to the cause of action.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. § 65.*

He who comes into equity must come with clean hands, see note to Knapp v. S. Jarvis Adams Co., 70 C. C. A. 543.]

2. EQUITY (§ 362*)—GROUNDS OF DISMISSAL—WRONGFUL CONDUCT OF COMPLAINANT.

A letter written by complainant in a suit for infringement of a patent to an officer of a licensee corporation, not a party to the suit, in which he stated his information that defendant's attorneys intended to visit the corporation's plants, and expected to obtain information that would tend to depreciate the patent, and suggesting that the officer "see that none of your employés will fail to uphold the patents at the expense of their personal vanity," *held* susceptible of a construction other than as an attempt to obstruct the due administration of justice by means of false testimony, or by preventing defendant from obtaining testimony, and not ground for dismissal of the suit on a motion made two years afterward, where the suggestion was not acted upon.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 758–761; Dec. Dig. § 362.*]

In Equity. Suit by Harry O. Chute against the Wisconsin Chemical Company. On motion by defendant to dismiss. Overruled.

This is an action on the equity side of the court, based upon United States patent No. 824,906, issued to complainant on the 3d day of July, 1906. The bill charges infringement, and prays for an accounting and injunction. The action was brought August 29, 1908. On October 24, 1908, the defendant answered. No issue was raised that the patent was a joint invention. Thereupon prima facie proofs were taken on the part of the complainant, and in due course considerable testimony was taken on behalf of defendant. At this stage of the proceedings, and more than two years after suit was brought, the defendant makes this motion, based upon the following petition, to dismiss with costs:

"And now comes the defendant herein and shows unto the court:

"(1) That subsequent to the bringing of this suit the defendant employed as its attorney or agent Palmer A. Jones, of Grand Rapids, Mich., to ascertain facts material to the defense in this case, and to negotiate with the plaintiff to avoid suit, if possible.

"(2) That, to the end of avoiding suit, on or about November 11, 1908, said Palmer A. Jones fully disclosed to the plaintiff herein the construction and operation of the defendant's plant, and the names of various witnesses whom the defendant proposed to interview and call to testify for the defense concerning their knowledge of the prior art.

"(3) That among such persons so named were several persons employed by the Lake Superior Iron & Chemical Company, a corporation extensively engaged in the manufacture of wood alcohol, and one W. H. Hinkle, then being second vice president and chairman of the executive committee of said company.

"(4) That thereupon the plaintiff herein did endeavor to obstruct and impede the due administration of justice in this court, contrary to the provisions

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the statutes of the United States, and particularly section 5399 of the Revised Statutes thereof, and to that end did on December 11, 1908, write a letter, directed to the aforesaid W. H. Hinkle, urging the said Hinkle to exercise his authority over the employés of said company in a manner intended and adapted to induce such employés to suppress and conceal whatever evidence said employés might have material to the scope and validity of the patent sued upon, a copy of which letter is hereunto attached and made a part of this petition, the original of which letter will be produced at the hearing.

"(5) Defendant further shows that the said W. H. Hinkle received the letter aforesaid and, thereupon did write a letter to the Wisconsin Chemical Company, the defendant herein, warning it and advising secrecy to prevent plaintiff from being informed of its movements and efforts in procuring its defenses; a copy of said letter being attached hereto and made a part of this petition, the original of which will be produced at the hearing.

"(6) Your petitioner further alleges, on information and belief, that various other efforts were made by the plaintiff from time to time, adapted to prevent the procurement and presentation by the defendant of facts material to the defense in this case, which efforts would and did obstruct and impede the due administration of justice in this court, contrary to equity and in violation of the statute.

"(7) Your petitioner further avers, on information and belief, that the aforesaid efforts of complainant were successful in some degree (but to what extent your petitioner is not informed and cannot say), and did prevent this defendant from getting into the record evidence material to the defense, that would have been obtainable had not the complainant unlawfully attempted to obstruct and impede the due administration of justice in this court as aforesaid.

"(8) Your petitioner prays judgment of the court to the effect that, because of the unlawful and inequitable conduct of the plaintiff in this cause, said plaintiff is not entitled to further prosecute this case and has no standing in equity in this court.

"(9) Your petitioner further prays that the above case be summarily dismissed, and that the defendant herein have a decree awarding its costs most wrongfully sustained, and such other and further relief as may seem meet in equity and good conscience."

The letter of plaintiff, thereto attached, is as follows:

"H. O. Chute, Chemical Engineer,

"Specialty Wood Distillation,

"120 Liberty Street, New York.

"Dec. 11th, 1908.—

"W. H. Hinkle, V. P. Lake Superior Iron and Chemical Co., Detroit. Mich.— Dear Sir: As I could get no settlement for my patent from the Phelps Hackley Co. or the Wisconsin Chemical Co., or recognition of my patents for producing alcohol, I brought suit against them, and I have been informed that their attorneys contemplate visiting Ashland and possibly other plants of your company. They intimate that they expect to get from parties there information that will tend to depreciate my patents. As you are the largest users of my patents and have a large amount of money invested in them, it is manifestly to your interest that they prove valid; and therefore I take it that you will see that none of your employés will fail to uphold the patents at the expense of their personal vanity, as your financial interests are now much different from what they were in these patents before you were given rights under them.

"Yours truly, [Signed] H. O. Chute."

It is the claim of the defendant that the writing of this letter rendered complainant liable to prosecution under section 5399, Rev. St. (U. S. Comp. St. 1901, p. 3656), which reads as follows:

"Sec. 5399. Every person who corruptly, or by threats or force, endeavors to influence, intimidate, or impede any witness, or officer in any court of the United States, in the discharge of his duty, or corruptly, or by threats or force, obstructs or impedes, or endeavors to obstruct or impede, the due ad-

ministration of justice therein, shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than three months, or both."

Hinkle, to whom the letter was written, was vice president of the Lake Superior Iron & Chemical Company, which corporation was a licensee of the complainant, and was extensively engaged in the business of producing wood alcohol by complainant's patented process. As is usual where ex parte affidavits are relied upon, we get but a lean outline of the facts of the case. It does not appear that Hinkle ever answered the letter of December 11, 1908, or that he ever made any effort in any way to comply with the request contained in said letter, or that he ever disclosed its contents to any one until September 2, 1910, when he gave the letter to defendant's counsel, to be used in an application for security for costs. It appears that certain employés of the Lake Superior Iron & Chemical Company were about that time, and for the first time, openly claiming that they had collaborated with the complainant in perfecting his process, and that his invention was the joint product of their inventive genius. This seems like a stale claim, as the patent was then more than four years old, and nothing had been heard of any such defense until this suit was brought. Complainant swears that there was no foundation for such a claim; that these men were hostile to him, and were simply boasting of their own genius and achievement. Defendant's counsel notified complainant that he was going to Ashland to obtain certain information from these disgruntled employés, with a view of defeating the patent. Thereupon complainant wrote this letter to Hinkle, who, as licensee, was jointly interested with the complainant in maintaining the monopoly. It further appears from the affidavit that the defendant has taken the testimony of these same witnesses under an amended answer, in the patent suit, without any suggestion of coercion or reluctance on their part to give testimony. Therefore the transgression upon which this special proceeding is based would seem to be the writing of this personal letter of December 11, 1908, which seems to have borne no fruitage.

As far as Hinkle was concerned, it appears that he had enlisted under defendant's flag three days before complainant wrote the letter of December 11th. This is plainly shown by Hinkle's letter to defendant's counsel under date of December 8th, in which occurs the following assurance: "This corporation, being, as you doubtless know, a stockholder in Wisconsin Chemical Company, we are naturally interested in this action, and will be glad to do all we can." His hostile attitude is further shown by his letter of December 18, 1908, to defendant's counsel, advising him that "every caution be used to prevent his [complainant's] obtaining information as to your proceedings in this case." Hinkle had balanced in his mind the conflicting interests of his corporation, and had decided to throw his influence in favor of defendant, and to ignore any obligation resting upon it to support the patent under which it held a license. This active hostility of Hinkle may well account for the fact that these employés of the Lake Superior Iron & Chemical Company, who had remained quiescent for four years, suddenly broke out in a chorus of opposition to the patent.

Mr. Jones, in his rebuttal affidavit, says that then and there, December 22, 1908, at Ashland, deponent first became aware of any available evidence of joint inventorship in the matter of the alleged process in suit, and such claim of joint inventorship was never mentioned by deponent or any one else to his knowledge prior to that time, or as an available defense in this suit.

No one can read the affidavits and letters without arriving at the conclusion that there was among these several corporations, and the several attorneys engaged in this litigation, what a distinguished politician once christened as an "inextricable intertwinement." Enough appears in the record to render the vague general statements in sections 6 and 7 of the petition as unworthy of attention by reason of an entire absence of facts.

Winkler, Flanders, Bottum & Fawsett, for the complainant.
Luther V. Moulton, for defendant.

QUARLES, District Judge (after stating the facts as above). This application is based upon a familiar equitable maxim, that "he who enters a court of equity must come with clean hands." The first question presented is whether this maxim is available, under the facts stated, to close the door of the court to the complainant.

Equity is supposed to guard the portals of her jurisdiction jealously. No cause of action will be proceeded with which has become infected with fraud or other iniquity, it matters not when or how the facts are brought to the attention of the court. The distinction is, however, fundamental that the transgression which falls within this maxim must have infected the cause of action, so that to entertain it would be violative of conscience. It does not reach a case where the cause of action is meritorious, and where, subsequent to suit brought, the complainant has been guilty of reprehensible conduct, but which does not go to the cause of action. Woodward v. Woodward, 41 N. J. Eq. 224, 4 Atl. 424; Liverpool, etc., Co. v. Clunie (C. C.) 88 Fed. 160, 170.

It is contended by defendant that this letter is an effort to impede and corrupt the due course of justice. If this be true, a plain, adequate remedy would be found under section 5399, Rev. St. Under such indictment the court would have the necessary machinery to determine the gravity of the offense, and to make the punishment fit the crime. A court of equity has no such facilities. It seems doubtful whether the court will intervene summarily in such a case, under the aforesaid maxim, to punish mere personal transgression, where the cause of action has not been contaminated, nor the records of the court despoiled. Primeau v. Granfield (C. C.) 180 Fed. 847. Complainant appears to have come to the court with a clean, wholesome cause of action, based upon a United States patent, whereby the government has conferred upon him, as a meritorious inventor, a lawful monopoly by way of approval and reward for the exercise of his inventive genius. For two years the cause of action proceeds in the usual way, when for the first time it is suggested that complainant had just then written a letter to a friend, who is not a party to the cause, which is supposed to be in violation of section 5399. Under these circumstances, does the power reside in the court to deny complainant the right to litigate with infringers who are wrongdoers? No case has been cited, and I can find none, where this equitable doctrine has been carried to this extent.

There is, however, another ground upon which I prefer to rest my decision. It will be conceded on every hand that, if the offending letter will bear an innocent construction, such interpretation must be placed upon it. To presume an iniquitous purpose, and thus give a guilty flavor to the document, would be to reverse the maxims of the law. The presumption of innocence is the strongest presumption known to the law, and complainant is entitled to its protection. This letter, read in the light of the facts disclosed by the affidavit, is susceptible of an innocent meaning. Hinkle's corporation was a licensee of the complainant, employing his patented process in the manufacture

of wood alcohol. Certain of the employés of said corporation at Ashland became hostile to the complainant for some undisclosed reason. They were openly claiming that they were collaborators with complainant in perfecting his process, and that it was in fact a joint invention. Complainant swears positively that there was no ground in fact for such a claim, that his process was completed before he went to the Ashland plant, and that these employés were merely boasting of their own skill and assuming airs by reason of their supposed inventive faculties. There is nothing in the record to dispute this positive statement of complainant, and the court must proceed upon the theory that it is true. It is evident that complainant refers in his letter to these very men as failing to uphold the patent "at the expense of their personal vanity."

Defendant's counsel, for some unexplained reason (presumably to bring pressure to bear on complainant), notified complainant that defendant was about to take the testimony of these disgruntled employés at Ashland. Whereupon complainant wrote this letter to Hinkle, vice president of the corporation. Defendant's counsel jumps at the conclusion that thereby complainant endeavored to thwart the course of justice by inducing Hinkle to organize perjury and fortify his patent by false testimony. The defendant is not justified in this conclusion. The law has been well settled, in this circuit and elsewhere, that a certain degree of loyalty is due from the licensee to his licensor. In Ind. Mfg. Co. v. Case Co., 154 Fed. 365, 370, 83 C. C. A. 343, 348, the court say:

"And throughout the valid relationship of licensor and licensee, appellant has the right, not only to royalties, but also to appellee's silence respecting the validity and prima facie scope of the patents. Siemens Elec. Co. v. Duncan Elec. Co., 142 Fed. 157 [73 C. C. A. 375]."

The same doctrine is held in Comptograph Co. v. Burroughs (C. C.) 175 Fed. 792, and cases cited.

Complainant was justified in appealing to Hinkle for a reasonable support of the patent in which they were jointly interested. There were other ways whereby these employés might fail to uphold the patent, besides going upon the witness stand. The boastful claim involves the validity of the patent, and would furnish aid and comfort to every infringer, and damage the value of the patent. If such claim was without foundation, it amounted to a slander of the patent. If the claim of joint invention was false or fanciful, it was clearly the duty of Hinkle to silence these employés, and a request to that effect by complainant involved no iniquity. From the standpoint of the complainant, the truth would furnish him support, and what he wanted was silence, and not perjury. He might, without any criminal intention, remind Hinkle of his financial interest in sustaining the patent, and he might ask him to use his influence in every lawful way to see to it that the patent be upheld.

When asked, upon the argument, why he did not bring this matter to the attention of the grand jury, if he thought the case would fall under section 5399, defendant's counsel replied that a criminal prosecution would do the defendant no good. This tends to strengthen

the suspicion that this special proceeding was invoked to win a lawsuit, rather than to vindicate the majesty of the law or the purity of equity.

For the reasons above given, the motion to dismiss will be denied, and an order to that effect may be prepared.