## WESTINGHOUSE ELECTRIC & MFG. CO. v. FORMICA INSULATION CO.

(Circuit Court of Appeals, Sixth Circuit. April 3, 1923.)

No. 3717.

1 Patents ⊚⟶289—Laches no defense, where suit brought within two years after patent issued, notwithstanding applicant's delay in prosecuting application.

Laches is not available to defendant in patent infringement suit commenced within two years after patent issued, and that delay explained by pendency of another suit between the same parties, even though plaintiff was not as diligent in prosecuting his application as he might have been.

2. Corporations ⊚⟶428(1)—Where inventor and assignor of plaintiff in patent infringement suit is officer of defendant corporation, latter chargeable with knowledge of plaintiff's pending application for patent.

Where the defendant in patent infringement suit had as one of its corporate officers the inventor, plaintiff's assignor, defendant is chargeable with his knowledge of the pendency of plaintiff's application for patent, and defendant cannot urge plaintiff's laches in prosecuting the application on the ground that it was misled thereby.

3. Estoppel ⊚⟶52—Not favored.

Estoppels forbid one to speak the truth, and hence technical estoppels are not favored.

4. Patents ⊚⟶197—Assignment need not be in writing, and written assignment analogous to quitclaim.

An assignment of patent need not be in writing as between the parties, but, if in writing in the common form, it contains no covenants of warranty, but sells and assigns all inventor's right, title, and interest in and to the said invention and patent, and is closely analogous to a quitclaim.

5. Estoppel ⊚⟶14—Assignor of patent before allowance not estopped as by deed.

The doctrine of estoppel by deed does not apply to an assignment of invention made upon filing the application for patent.

6. Patents ⊚⟶183—Assignor estopped from denying existence of invention sold.

Where an inventor sells his invention, receiving a consideration, and either expressly or by implication causes or permits the vendee to believe that it would get good title to a monopoly of at least a specified extent, or of an extent later to be determined by the Patent Office, the doctrine of equitable estoppel precludes him from later denying the existence of the thing sold.

7. Patents ⊚⟶183—Salary of employee sufficient consideration for assignment of his inventions as agreed.

Where it is part of a contract of employment that the employee shall assign his inventions, his salary is ample consideration to estop him from denying existence of the invention assigned, and even though the employer paid nothing more than it would have otherwise paid, and was not in this particular misled to its prejudice, yet the expenditure of efforts and money necessary to procure patent and the conduct of its business on the faith of representations made sufficiently show material prejudice.

8. Patents ⊚⟶183—Assignor not estopped, where assignee makes broader claims than assignor contemplated.

The doctrine of estoppel in pais is not applicable, where an inventor assigned his claims for process, where the claims on which the patent issued were broader than any drafted by the inventor, there being no showing to support an inference that the inventor either expressly or impliedly represented to his assignee that he was the inventor of the process defined in such claims.

---

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(288 F.)

**9. Patents ☞328—No. 1,284,432 invalid and not infringed.**
 Patent No. 1,284,432, issued November 12, 1918, covering a process for making a nonplaniform composite material, *held* invalid, if broad enough to be infringed, there being no creative virtue in the mere "nonplaniform" thought.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

Suit in equity by the Westinghouse Electric & Manufacturing Company against the Formica Insulation Company for infringement of patent. From a judgment of dismissal, plaintiff appeals. Affirmed.

A. M. Allen, of Cincinnati, Ohio. (John C. Kerr, of New York City, on the brief), for appellant.

J. Edgar Bull, of New York City and John H. Lee, of Chicago, Ill. (Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., and Wood & Wood, of Cincinnati, Ohio, on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The appellant brought in the District Court the usual infringement suit upon claims 11 and 12 of patent No. 1,284,432, issued November 12, 1918, to O'Connor, on an application filed February 1, 1913, covering a process for making composite materials. The two claims are alike, save that claim 12 calls for "a phenolic condensation product," while claim 11 more broadly reaches in the same association any suitable adhesive substance. Claim 12 is given in the margin.[1]

In the court below the defenses were that these claims were invalid, or that, if valid, they must be so narrowly construed that there was no infringement, and that there had been laches sufficient to bar the maintenance of the suit. In reply plaintiff urged that the broad construction indicating infringement was the right one, and that the defendant was estopped to dispute validity. The District Court sustained the defense of laches, and the other questions were not passed upon.

[1] We cannot uphold this defense. The suit was commenced within two years after the patent issued, when, if ever, plaintiff first acquired any right or cause of action, and there is no suggestion that defendant changed its position during that period. Even that delay is explained by the pendency of another suit between the same parties, directed against the same product, and which, if successful, would have made this suit probably unnecessary. Defendant's real complaint goes further back. It or its predecessors began the infringing business in 1913, and continued it, with the knowledge of the plaintiff and without express notice to desist, from that time until this suit was brought in 1920. During this period defendant built up a large business and doubtless made large investments, based in a substantial degree upon the manufacture of the infringing articles and the expecta-

---

1 12. The process of manufacturing a nonplaniform article which consists in superposing a plurality of layers of fibrous material associated with a phenolic condensation product and molding the superposed layers by means of a form of the proper shape while applying pressure and heat to compact and harden the materials.

tion of continuing that manufacture. The application, as filed in 1913, was repeatedly rejected and amended, and was prosecuted with reasonable diligence during the last two years, but for the first three years of the application period the plaintiff was only as diligent as the law required, and delayed its successive actions for the full period. It is hence probably true that the application was pending two or three years longer than it would have been if plaintiff had, in every instance, acted as promptly as possible.

[2] Even if, under such circumstances, a defendant who had had no knowledge of the pending application could escape an injunction on final hearing (and, as to this, we intimate no opinion), this defendant can claim no such standing. The inventor himself had been active from the beginning in the infringement, either as one of the partnership associates at the outset, or as an active and important officer of the later organized corporate defendant. The defendant and its predecessors were clearly chargeable with his knowlege. He knew that, when the infringement began, this application had been filed and assigned to plaintiff, with claims broad enough to reach defendant's article, and he never had reason to suppose that the application had been finally rejected. We cannot see that defendant has any right to say it was misled either by action or by silence. To predicate fatal laches upon silence before the patent issued would be to stand on an unsafe basis. The situation is not, we think, fairly analogous to that in Lane Co. v. Locke, 150 U. S. 193, 200, 14 Sup. Ct. 78, 37 L. Ed. 1049.

As to the breadth of the claims: Other claims of the patent refer to what is called the two-step process and require that the sheets or layers should be first heated and pressed to secure unity of composition, then subjected to a further and different heat or pressure, or both, to make permanent the desired shape of the article. The utter omission of any reference to or implication of the two-step process in claims 11 and 12, and their entire dependence upon the single step recited, is convincing evidence that there was no intent to have these claims limited to the two-step process, and this conclusion is compelled, even though it is true that their difference in this respect from the other claims is not the sole manner in which they are distinguished therefrom. In many cases, perhaps usually, claim differentiation is not sufficient to compel the broader construction of one of the claims if there are differences in other respects; but in this case the omission of the two-step limitation is so plainly intentional that we cannot neutralize it by a counter inference which is at best uncertain. These two claims are within the rule that an unambiguous claim cannot prevail over an apparent anticipation by reading a limitation into it. If these claims are not thus limited, infringement is conceded, and the issue of validity must therefore be decided; but plaintiff would escape that issue by reliance on O'Connor's estoppel. We think he was not estopped. This question justifies an inquiry into the basis of the estoppel enforced against the patentee assignor. The rule itself has become one of general acceptance, but our attention has not been directed to any satisfactory consideration of its basis or theory, and perhaps for this reason there has been much confusion in its application.

[3-5] Estoppels forbid one to speak the truth, and hence technical estoppels are not favored. Omitting those by record, there are two kinds, by deed and in pais. On a somewhat exhaustive search we find no considered opinion holding that the estoppel of a patent grantor arises by deed;[2] nor is there clear reason for such conclusion. An assignment of patent need not be in writing at all, as between the parties; but, if it is, the common form contains no covenants of warranty. It sells and assigns "all my right, title, and interest in and to the said invention and patent." There is close analogy to a quitclaim; at the most, it may be, the implication is of good title to the grant and not that the grant is good. With real estate, a conveyance from the sovereign gives good title to the land, and so title to the grant and title to the land are inseparable; not so as to patents, for the grant of the monopoly is always defeasible by third parties, and the title to the grant may be immaterial. But, even if the transfer of an existing grant of monopoly may create an estoppel by deed forbidding the grantor to deny the validity of the grant, this theory is inapplicable to the transfer of the inchoate right suggested by a pending application. By the common form of transfer the grantor in effect says:

"Here is my device; I do not know whether it is patentable, or, if it is, how broadly; take it, prosecute the patent application, and get what you can."

The formulation of the grant may be, and was here, delayed for years after the inventor's connection with the matter ceased, and the patent may be issued with broad claims which the inventor never made and which he knew were not his invention. Manifestly, as we think, the theory of estoppel by deed is untenable.[3]

[6] This leads to the conclusion that this particular estoppel arises merely from those principles of good faith, the application of which creates equitable estoppels. If the inventor sold his invention, receiving a consideration, and either expressly or by implication caused or permitted the vendee to believe that it would get a good title to a monopoly of at least a specified extent or even of an extent to be later determined by the Patent Office, for him later to deny the existence of the thing he sold and was paid for would be to have misled the vendee prejudicially; and hence he may not deny. This is the basis upon which this rule has been frequently put, either expressly or by assumption.[4]

[7] Considered from this basis, O'Connor is not estopped as to the two claims in suit. It is not controlling that the only consideration

[2] Assumptions, without discussion, that the estoppel is of this character have been made, e. g. Chicago Co. v. Pressed Steel Co. (C. C. A. 7) 243 Fed. 883, 887, 156 C. C. A. 395; Walker, § 469.

[3] In Siemens Co. v. Duncan Co., 142 Fed. 157, 73 C. C. A. 375, it was found that Duncan had represented that he was entitled to, and had sold and conveyed the right to, the precise monopoly covered by the claim sued upon; from this basis, an estoppel followed of necessity; the name of it was not important.

[4] Babcock v. Clarkson (C. C. A. 1) 63 Fed. 607, 11 C. C. A. 351; Onderdonk v. Fanning (C. C.) 4 Fed. 148, 150; Consolidated Co. v. Guilder, 9 Fed. 155, 156; Time Tel. Co. v. Himmer, 19 Fed. 322, 323; Woodward v. Boston Co., 60 Fed. 283, 284, 8 C. C. A. 622; Nat'l. Co. v. Connecticut Co. (C. C.) 73 Fed. 491, 493.

he received was his salary as an employé, for, if it was part of the contract of employment that he should assign his inventions, the salary was ample consideration for applying as complete an estoppel as the other facts justified; and, even though the employer paid nothing more than it would have paid anyway, and was not in this particular misled to its prejudice, yet it undertook and expended the effort and money necessary to get the patent and it may be presumed to have conducted its business thereafter on the faith of whatever representations were made to it. Hence the element of prejudice might sufficiently appear, even in a case of mere salary.

[8] Also it may be granted that these two claims were properly readable upon the specification and drawings of the application signed by O'Connor—that is to say, in the language of the Patent Office, that he had the right to make these claims. Nevertheless they expressed a conception of the invention, which rested solely on the "nonplaniform" shape of the article and was in this respect broader than any claim which O'Connor had drafted, and if the prior Baekeland patent had been known to O'Connor, as it became known to his assignees when it later compelled them to abandon the original broad claims, he probably never would have claimed as his the invention thus formulated. The record does not support the inference that O'Connor either expressly or impliedly represented to the Westinghouse Company that he was the inventor of the process defined in these two claims, and hence the claim of estoppel must fail.

[9] Coming directly to the question of validity, and giving these claims the broad construction reaching the one-step process, and necessary in order to make out an infringement, it is entirely clear that there is no creative virtue in the mere "nonplaniform" thought, and hence that they are not patentable over Baekeland. Indeed, no argument to the contrary is made by counsel.

The decree below dismissing the bill is affirmed.