## ROGERS *v.* RIESSNER and another.

*(Circuit Court, S. D. New York. March 28, 1887.)*

1. PARTNERSHIP—CONSTRUCTION OF CONTRACT—PATENT RIGHTS.

R., the orator, entered into a partnership with N. for the purpose of making and selling certain patented articles, and selling territorial rights. R. furnished $1,000, and N. the use of the patent, the title to which he retained, the profits to be equally divided. A quarter interest in the patent was sold to B., and the proceeds of the sale, and a like proportion of the capital furnished by R., became common property. Subsequently R. and N. made a supplemental agreement, declaring that any definite reduction in the capital of N., (the patents,) resulting from any action of the firm, affected R.'s capital in the same ratio; that all letters patent and reissues in the same class of inventions should be at the expense of the firm, and that R. should have three-eighths of all the proceeds thereof; that, in case of dissolution, R. might take all that should remain of his $1,000 capital, after making the deduction provided for, and N. should have the privilege of taking the remaining interest in the letters patent, paying a proportionate amount of the expense incurred by the firm; and, in case of negotiations with any other party pending at the time, R. should have reasonable and ample time in which to act on such negotiations, thereby reducing the same to fixed and definite proceeds before said N. could effect the dissolution; and, if negotiations be completed with any other party for royalties, nothing should be construed as depriving R. of his full share. By a contract to which R. consented, the rights of R. being known to all parties to the transaction, N. and R. gave to C. R. & Co., the firm to which defendants belong, the exclusive use of the patent in the United States, C. R. & Co. to pay certain license fees to N. A few months later N. gave notice of the dissolution of the partnership with R., and claimed that R. had no interest in the royalties, and subsequently assigned to Y. all his remaining interest in the patents, subject to the contract with C. R. & Co. *Held,* in a suit by R. against C. R. & Co., that R. was entitled, under the contract, to his three-eighths of the royalties as proceeds of the patent, whether the same were payable before or after the dissolution of the partnership.

2. SAME—EQUITY—TRUST.

The fact that the royalties were payable to N. made him trustee of R., so that R.'s share was due N. at law, and R. in equity.

3. SAME—INCOMING PARTNER—LIABILITY.
Defendant M. entered the firm of C. R. & Co. at the time the royalties began to accrue, and enjoyed the benefit of the license as a partner in the firm under the contract. *Held*, that M. was liable, not on an express contract, but on the implied contract to pay for what he has had as a member of the firm, on the terms on which the firm had it.

4. SAME—TERMINATION OF CONTRACT—NOTICE—WAIVER.
The contract of N. and R. with C. R. & Co. provided that, on failure to make return or payment at the agreed terms, for 10 days, N. had the right to terminate the contract. Pending litigation between R. and N. in regard to the royalties, C. R. & Co. failed to make payment to N. for more than 10 days, whereupon N. claimed the right to terminate the contract, but continued to accept payments. Subsequently N.'s assignee gave the notice of termination long after this default, but what was done seemed to have been done, not in order to terminate the contract, but to cut off R.'s rights, and to leave it to continue for the benefit of N., and those acting under him. *Held*, that the provision was for the purpose of enforcing payment, and could be and was waived, and that C. R. & Co., by an acceptance of a notice of termination long afterwards, could not conclude R.'s rights without his consent.

5. ACCORD AND SATISFACTION—RECEIPTS—EVIDENCE.
C. R. & Co. made payment for two months to R.'s attorney, pending R.'s litigation with N., which litigation resulted in N.'s favor. C. R. & Co. claimed that this payment was upon an agreement that R. would make no further claim on them, but would look to N. for further indemnity. The receipts were for the amounts paid, and specified that they were for the amounts due for those months. The attorney testified that there was no such agreement. *Held*, that the presumption is that the receipts show the transaction, since the verbal testimony was conflicting, and there could be no accord and satisfaction unless the understanding was mutual; that is, of R.'s attorney as well as C. R. & Co.

6. PATENTS FOR INVENTIONS—LICENSE—ESTOPPEL.
Defendants questioned the validity of the patents, or of the reissue of one of them, but showed no eviction. *Held* that, in the absence of such a showing, they could not dispute their licensor's title.

7 EQUITY—JURISDICTION—CONTRACT.
There was a formal assignment to R. of his right by the master of chancery in the suit against N. in the Illinois courts. Defendants contend that this action, being a suit for an account of license fees by an assignee of the claim, was not in the jurisdiction of a court of equity. *Held* that, since R.'s rights accrued to him, not through the master's assignment, but by reason of his interest as partner, and since, not being a party to the contract, he could not sue on it at law, though he had equities in it, a court of equity had jurisdiction.

8. SAME—PARTIES.
Defendants objected that N., and Y., N.'s assignee, were not made parties. *Held* that, since R. claimed nothing of them, and they had settled with defendants, they were not necessary parties.

9. JUDGMENT—CONCLUSIVENESS—PARTIES.
The judgment of the Illinois court, though conclusive between R. and N., was not conclusive between R. and defendants, since they were not parties, though the members of the firm had knowledge of the case, and expressed themselves as willing to abide by it.


In Equity.
*George C. Lay*, for orator.
*W. H. L. Lee*, for defendant.


WHEELER, J. From the pleadings and proofs it appears that the orator and one Daniel W. Norris, who owned letters patent No. 195,385, dated September 18, 1877, granted to him for improvements in incased glass vessels, entered into a partnership for the purpose of making and

selling the patented articles, and selling territorial rights, by the terms of which the orator furnished $1,000 as his share of the capital, and Norris the use of the patent, the title to which he retained; and the proceeds of any territory which might be sold or leased were to be equally divided between them, all arrangements for that purpose being subject to the approval of Norris. They sold a quarter interest in the patent to one William W. Burgess, which Norris conveyed to him, February 8, 1878, and the proceeds of the sale, and a like proportion of the capital furnished by the orator, became, by their understanding, a part of the common property. The patent was reissued July 9, 1878, and Norris obtained letters patent No. 208,628, dated October 1, 1878, for improvements in like vessels; and on the eighth of April, 1879, the former patent was again reissued. Then, June 6, 1879, the orator and Norris entered into another agreement, explanatory of and supplementary to the former, by the terms of which it was declared that any definite or certain reduction in the capital of Norris, (the patents,) resulting from the action of the firm, affected the capital of the orator in the same ratio; that all letters patent and reissues, for improvements in the same class of inventions in addition to those provided for in the former agreement, should be at the expense of the firm; that the orator should have three-eighths of the proceeds of all said letters patent, and of the proceeds of letters patent No. 195,385, including reissues of the same; that, in case of dissolution, the orator should have the privilege of taking such portion of the $1,000 furnished by him as should remain after making the deduction provided for, and Norris should have the privilege of taking whatever interest might remain in the letters patent by paying a proportionate amount of the expense of those which were at the expense of the firm; and that, "in case of negotiations with any other party pending at any time," the orator should "have reasonable and ample time in which to act on such negotiation, thereby reducing the same to fixed and definite proceeds before said Norris" should "be permitted to effect a dissolution of said partnership as" therein " provided for; and if negotiations be completed with any other party, whereby any fixed and definite amount of money or other property" should "become due said firm as royalties or otherwise, at any fixed and definite and future time, nothing" therein "contained" should "be construed as in any way depriving said Rogers of his full share, as" therein "provided for, of such amount." After that, June 23, 1879, and while this partnership agreement was in force, a contract was entered into, on which the orator acted, and to which he consented, between Norris and Burgess and the firm of C. Riessner & Co., which then consisted of the defendant Riessner and two others, and now consists of the defendants,—the fact that the orator had an interest in the contract being understood by all engaged in making it,—by the terms of which Norris and Burgess agreed to give that firm the exclusive right to make and sell the patented improvements throughout the United States, to the end of the term of the patent, and that firm agreed to pay certain license fees monthly, and to make returns quarterly to Norris, and Norris had the right to terminate the agreement upon fail-

ure to make return or payment for 10 days, and Riessner & Co. on four months' notice.

While this agreement was in force, September 11, 1879, Norris gave notice of the dissolution of the partnership between him and the orator, and thereafter claimed that the orator had no interest in or right to the three-eighths of the license fees or royalties accruing due from C. Riessner & Co., and November 4, 1879, assigned all his remaining interest in the patents to one Wesley Young, subject to the contract with C. Riessner & Co. Thereupon, November 7, 1879, the orator commenced suit against Norris in the state courts of Illinois, where they resided, to have his rights to the three-eighths of the license fees decreed to him, and for an injunction to prevent the collection of the amount due on that share by Norris. Riessner & Co. were informed of this litigation, and withheld payment of the share claimed by the orator. In January, 1880, C. Riessner & Co. failed to make payment of the royalties of the December previous, due January 1st, for more than 10 days, and Norris claimed the right to terminate the contract on that ground. On March 26, 1880, the court of Illinois, in which the suit between the orator and Norris was pending, decided that the orator was entitled to . the three-eighths interest in the license fees accruing under the contract with C. Riessner & Co., and decreed that Norris execute an assignment of that share of the interest in that contract, and that, in default of such execution by Norris, the same be made by a master of the court, which was done. C. Riessner & Co. were fully informed of this decree, and soon thereafter paid to the orator the amount of that share of the royalties up to the first day of April, 1880. Norris appealed from the decree, and Riessner & Co. retained the three-eighths share from him, and paid it to the orator monthly, to November 1, 1882. On the twentieth of that month the supreme court of Illinois reversed the decision in favor of the orator, and the orator immediately applied for a rehearing. Riessner & Co. were informed of this, and on December 20th wrote to the orator that, as the case had then been decided in favor of Norris, they did not feel justified in paying him any more until a final decision was reached; that until then they should withhold all further amounts; and, if the decision should come in his favor, he would at once receive all that was due him. After that, relying on the decision already made, they made terms with the assignees of Norris, and those acting with him and under him. On June 16, 1883, the supreme court of Illinois affirmed the original decree in favor of Norris, and, on July 3d after, Riessner & Co. paid to the orator's attorney the three-eighths of the royalties for November and December, 1882, and gave receipts therefor. They have declined to pay him any further royalties, and this suit is brought for an account and recovery of the same.

The most important question that is made is whether the orator was entitled to the three-eighths of the license fees after the dissolution of the . partnership. The decision of the supreme court of Illinois, having jurisdiction of the parties and the subject, is conclusive, as between the orator and Norris, but not as between the orator and C. Riessner &

Co., for that firm was not a party to that suit, although the members had knowledge of it, and for a time expressed themselves to be willing to abide by its result. The decision of that court is, however, entitled to much weight as an authority upon the question involved. The first partnership agreement shows clearly that the proceeds of the disposition of the right secured by the patent were to become partnership assets, belonging to both. The object of the partnership was to manufacture and sell the patented articles, and to sell territorial rights; and in the fifth paragraph of the agreement it was expressly provided that the proceeds of territory sold or leased should be equally divided between the partners. Before the second agreement they had sold one-fourth of the right, and its proceeds had gone into the common assets, leaving them the owners of three-fourths of that patent. In the supplementary agreement it was expressly agreed that the orator should have three-eighths of the proceeds of that patent, and the same share in those of the other patent, granted to Norris after the former agreement. The agreement of C. Riessner & Co., to pay license fees, constituted proceeds of both patents of which the orator would by that provision be entitled to three-eighths. But, as if to put the matter beyond any question, a clause paramount to all others was added, which provided that nothing therein contained should be construed as in any way depriving the orator of his full share of any fixed and definite amount of money or property which should become due the firm at any fixed and definite future time. Whether the proceeds of any part of the exclusive rights disposed of should be paid down, or become due afterwards, his share, if the amount and time were definite, was effectually secured to him. The promise was to Norris, but was made when he was a partner with the orator, upon a consideration belonging to the firm, and it inured to the benefit of the firm, the same as a promissory note taken to himself for property of the firm would. *Stearns* v. *Houghton,* 38 Vt. 583; *Leach* v. *Leach,* 18 Pick. 68. The same conclusion is reached that was finally reached by the supreme court of Illinois. After the dissolution, each partner owned his share as tenant in common. Colly. Partn. § 107. The orator's share of these license fees was three-eighths, as fixed by the terms of the supplementary agreement. At law this was due to Norris, as trustee for the orator. Id. In equity it would be due to the orator himself.

· Another important question is as to the effect of the failure to make payment for 10 days, and of what was done thereupon by his assignee and by himself. The contract provided that, upon such failure, Norris might terminate the agreement by serving notice to that effect. This provision was for security of payment, and could be waived. He did not give any notice of termination, and insist upon it, but alluded to it, and suffered the contract to continue, and received subsequent payments. The agreement could not be both terminated and continue. When his assignee gave notice, it was long after it had been left to continue, notwithstanding that default. And what was done does not appear to have been done to really terminate the contract, but to cut off the orator's rights under it, and leave it to continue under the form of a new one,

v.30f.no.8—34

for the benefit of Norris and those acting under him. Such a contrivance would not defeat the orator's rights, even if they could at all be defeated on such a default, against his will. C. Riessner & Co. accepted the notice of termination long afterwards, but they could not, by that act, dispose of the orator's claim against themselves without his agreement.

Another question is as to the effect of what transpired when the payments of the orator's share for November and December, 1882, was made to his attorney. The testimony of the defendants tends to show that this payment was made upon an agreement that he would make no further claim on them, but would look to Norris for further indemnity. The testimony of the attorney is that there was no such agreement. The receipts are for the exact amounts paid, and specify that they are for the amounts due for those months. It may be that something was said about reaching Norris, but the presumption is strong that the receipts show the real transaction, and, supported as it is by the testimony of the attorney, it is not overcome by that of the defendants. If they so understood it, he did not apparently, and the transaction would not amount to an accord and satisfaction without a mutual understanding to that effect.

Another question made is as to the liability of the defendant Meier. He entered the firm just before or at the time when the royalties in question began to accrue. He enjoyed the benefit of the license as a partner in the firm, under the contract. He is not liable upon any express contract, but is liable upon the implied contract to pay for what he has had as a member of the firm, upon the terms upon which the firm had it.

Some question has been made about the validity of the patents, or of the reissue of one of them. The defendants have not, however, so far as has been shown, been evicted from any of the exclusive rights which the patents purported to give, by any paramount title, but have occupied and enjoyed those rights. They are not, therefore, in any position to dispute their licensor's title. White v Lee, 14 Fed. Rep. 789; McKay v. Jackman, 17 Fed. Rep. 641.

The defendants insist that this court, as a court of equity, has not jurisdiction of this cause, for the reason that it is a suit for an account of license fees, by an assignee of the claim, as they allege; and they rely upon Root v. Railway Co., 105 U. S. 189, and Hayward v. Andrews, 106 U. S. 672, 1 Sup. Ct. Rep. 544, in support of this limitation. It is an account of license fees that is sought in this case, but not by the licensor, as was the case in Root v. Railway Co., nor by an assignee of a right of action at law merely, as was the case in Hayward v. Andrews. The orator's rights accrued to him by force of his interest as partner, and they were purely equitable rights, existing independently of the formal assignment by the master in chancery under the decree in Illinois. As the written contract did not run to him, he could not maintain an action at law upon it; as he was the equitable owner of the three-eighths part of the royalties, as they accrued, he could maintain a suit in equity for

an account of them. An action at law would not only not be a full, complete, and adequate remedy, but not any remedy at all. Jurisdiction does not depend on the prayer for an injunction, as is the case often in suits for infringement. The assignment by the master was no greater in effect than one by Norris would have been, and would not give an action at law if Norris had been the owner of one, and would not convert the orator's equitable into a legal right, so as to take away the right to proceed in equity upon it.

A suggestion is made that the jurisdiction fails because the amount in dispute does not exceed $500. But as the amount of this share appears to have been $230.65 for November, 1882, and $103.38 in December, it clearly enough appears that the amounts of the same for the number of months in controversy will exceed, or reasonably may be claimed to exceed, $500. It is also objected that neither Norris or Young is made a party, and insisted that they, or one of them, should be. But the defendants have fully settled with them, and the orator claims nothing of them. There is nothing in controversy in which they have any interest. The defendants have all the rights in respect to the orator's claim that these persons had, and the orator has his own rights. The controversy is wholly between the orator and defendants. No others appear to be necessary parties.

Let a decree be entered for the orator for an account of the three-eighths of the license fees, according to the prayer of the bill, with costs.

---

(April 9, 1887.)

*Geo. C. Lay*, for orator.
*Turner, Lee & McClure*, for defendants.

WHEELER, J. Further question is made, on settlement of the decree in this case, with respect to the termination of the license by the act of parties other than the orator, and to accounting for what has been done since suit brought. If Norris, or Young, his assignee, had power to terminate the contract, without regard to the orator's rights under it, for non-payment of the license fees, neither of them did so for that cause, and they had no right to do it but for that cause. The defendants had the power to terminate the contract by giving notice according to its terms, and ceasing to operate under it. They did not do that. If they had, they would have been chargeable only so far. The orator had rights under the contract which the others could not trade away. What was done about terminating the license appears to have been to pretend to terminate it without really doing so, for the purpose of cutting off the orator's rights. This was of no effect. They could not do, by indirection, what was beyond their power to do directly. What they did under the patents was done in pursuance of the original arrangement, and the orator is entitled to his share. The rights of the parties are to be determined as they stood at the commencement of the suit. When deter-

mined, an account which follows should cover everything within it to the time of taking the account. *Rubber Co.* v. *Goodyear*, 9 Wall. 788. Of course, any question as to what is or not within the scope of the accounting decreed may be made before the master, and taken before the court, according to the rules and practice in such cases.