## ADEE et al. v. THOMAS.

(Circuit Court, E. D. New York. January 25, 1890.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—WASTE-TRAPS.
   Letters patent No. 286,746, for a waste-trap, were issued October 16, 1883, to Samuel E. Thomas, who stated that the object of his invention was a waste-trap, "wherein the seam is in the upper portion, where the water does not come in contact with it." He accomplished this object by casting the central partition, for about half its length from the bottom, solid with the walls of the trap, leaving the upper part of the partition free from the side walls, so that this portion could be bent down closely over the exit-pipe. *Held* infringed by traps made under patent No. 371,-107, for "waste-trap for basins, closets, etc.," granted October 4, 1887, also to Samuel E. Thomas, in which so much of the partition as lies below the exit-pipe is also cast integral with the side walls, thus avoiding the objectionable seam.

2. SAME—ANTICIPATION—ESTOPPEL—ASSIGNMENT OF PATENT.
   Though a patent is void by reason of its anticipation by an earlier foreign patent, the patentee is estopped from urging that as a defense to a suit by his assignee for an infringement of the patent.

In Equity. Bill for injunction.

Final hearing of suit in equity to restrain infringement of a patent originally granted to defendant, and by him assigned to complainants.

*A. v. Briesen,* for complainants.   *Louis W. Frost,* for defendant.

LACOMBE, J.   The patent upon which complainants bring suit is No. 286,746, for a waste-trap, dated October 16, 1883, and issued originally to the defendant.   On July 15, 1888, he assigned it to the complainants for a valuable consideration.   In vindication of the waste-traps which defendant now makes against the charge of infringement, the only evidence introduced is found in three patents, two prior and one subsequent to that sued upon.   The subsequent patent is No. 371,107, October 4, 1887, granted to defendant for "waste-trap for basins, closets, etc."   That defendant manufactures traps under a subsequent patent, and that such subsequent patent covers improvements of great merit, (if it does,) is wholly immaterial, should it appear that the traps made thereunder do in fact infringe upon the patent in suit.   There is no expert testimony in the case as to the prior state of the art, or explanatory of the earlier patents, one of which was not even set up in the answer.   This branch of the case is therefore to be determined upon the face of the papers.   By the disclaimer in the patent sued upon it is apparent that no claim was made for traps the sole distinguishing feature of which was the presence of dams at an inclination to the body of the trap, and covering the lateral opening to the sewer, "as in English patent No. 1,504 of 1858." No testimony as to what this English patent covered is to be found in proof.   The claim made is:

(1) In a waste-trap adapted to be inserted in a line of pipe, the combination, with the inlet-pipe, $a'$, and exit-pipe, $d$, of the cup, $b$, and the partition, $f$, the upper end of which is inclined towards the exit-pipe, $d$, and united to the interior of the cup, $b$, above said pipe, $d$, substantially as set forth.

Reference to the specification shows quite clearly the object of the invention.   In the manufacture of cast-lead traps for plumbers' use, great care has to be exercised in making them of a desirable and efficient form, and also in such a manner that the cores can be easily removed after casting.   It is also desirable to have no seam in the lower part of the trap where the waste water remains, as the rough or projecting edges of this seam are liable to catch and retain particles that eventually will interfere with the proper washing of the trap; and this seam is also liable to open or separate from expansion and contraction produced by heat and cold, and thus become leaky,—probably the most serious defect in a waste-trap.   The patentee states that the "object of his invention is the making of a cheap, efficient, and reliable waste-trap, wherein the seam is in the upper portion, where the water does not come into contact with it, and the cup portion is of such shape that the cores can be easily and quickly removed after casting."   Figs. 1 and 2 of the patent show the manner in which he accomplished these results.

The trap is constructed of the upper portion, $a$, and the bottom or cup portion, $b$.   The upper portion, $a$, has the inlet-pipe, $a'$, and the bot-

tom portion is constructed with the exit-pipe, *d*, and cleaning-plug, *e*, as usual. Sometimes the inlet-pipe, *a'*, is at that side of the cup, *b*, which is opposite to the pipe, *d*. The central partition, *f*, is cast solid with the walls of the trap, from 1 to 2, while the upper portion is free from the side walls, and elliptical in the shape of its edges, so that this portion of the partition may be bent down into the cup, *b*, and its edges will set closely against the inner surface of the cup, *b*, as seen in Fig. 1. After being so bent, they are soldered to the sides, and the parts *a* and *b* are also soldered at the seam, *c*, when the two parts of the trap are put together. Traps constructed in this way can be made with facility, be-

cause the cup, *b*, pipe, *d*, and partition can all be cast in one piece in a metallic mould, and the cores easily drawn out. Moreover, there is no seam below the water-line, as in other traps; all the parts below the exit being cast integral, and the objectionable features of a seam noted above are thus avoided.

It needs no evidence to show that a waste-trap in which a central partition or dam combines with the waste water, so as to form a seal against sewer gas, which may be effectual, and not subject to leakage, is a patentable invention. The mere combination, however, of a dam, bending over to and covering the exit-pipe, with the waste water, is disclaimed. What is the full extent of this disclaimer is not apparent, as the English patent

to which it refers was not introduced. But, giving the broadest construction to the disclaimer, there is quite enough left to sustain the patent sued upon as one for a cast-lead trap with such a dam, wherein the casting is so managed that all the parts below the water-line are cast integral and without seam.

Two prior patents were put in evidence by the defendant, viz.: English patent 4,849, to Garrett Claughton, November 27, 1879, and United States patent 246,453, to L. Brandeis, August 30, 1881. Both of these show the combination of an inclined dam, curving over towards and covering the exit-pipe. In the Brandeis patent the two parts of the trap are joined together below the water-line, being secured by a bushing, or in any other suitable manner, so that the lower part may be unscrewed or detached from the upper, to examine or clear the trap. In the absence of any expert evidence, it may be doubted whether or not such junction of the two parts of the trap is a seam of the objectionable character referred to in the patent sued upon. Be that as it may, however, the English patent to Claughton seems plainly to show a casting in which the parts below the water-line are cast integrally and without seam. The only apparent invention embodied in the patent sued upon is thus shown to be anticipated. Nothing is left but minor details of construction, the conception of which would seem to be within the capacity of an ordinarily skillful mechanic, and, if the defendant were entitled to avail of such a defense, the patent should be held void for lack of invention. The defendant, however, was himself the patentee of the patent sued upon, and the complainants hold it as his assignees. It is well-settled law that a patentee cannot be heard to deny the validity of his own patent against the assignee to whom he has sold and transferred it. As to the rest of the world, the patent may be void, but the assignor is estopped from urging that defense against his assignee. *Purifier Co.* v. *Guilder*, 9 Fed. Rep. 155; *Curran* v. *Birdsall*, 20 Fed. Rep. 835.

Whatever improvements upon his original patent (now sued upon) may be covered by his second patent, under which he is now making waste-traps, the articles he makes do manifestly contain the distinctive features of the original patent. They have a dam fastened to the side walls, and curving over the exit-pipe, a feature probably covered by the disclaimer, but so much of this dam as lies below the exit is cast integral with the side walls, thus avoiding the objectionable seam; and this feature is not within the terms of the disclaimer, nor could it be stricken out of the patent without leaving the same void for lack of invention. Infringement is therefore plain. Let there be a decree for complainant.