### PEELLE CO. v. RASKIN et al.

(District Court, E. D. New York. January 17, 1912.)

1. PATENTS (§ 129*)—SUIT FOR INFRINGEMENT—ESTOPPEL TO DENY VALIDITY.
    A patentee is estopped to deny the validity of the patent as against an assignee when sued for its infringement, even though facts which render the patent invalid were known to the assignee at the time the assignment was made.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. § 129.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ELEVATOR DOOR.
    A preliminary injunction against infringement of the Raskin patent, No. 871,735, for an elevator door, granted as against the patentee, but denied as against a second defendant.

In Equity. Suit by the Peelle Company against Tillie Raskin and Joseph Raskin. On motion for preliminary injunction. Granted as to defendant Joseph Raskin, and denied as to Tillie Raskin.

Fred H. Bowersock, for complainant.
Charles F. Dane, for defendants.

CHATFIELD; District Judge. This is a motion for a preliminary injunction upon a complaint and affidavits alleging infringement of four claims of patent No. 871,735, granted November 19, 1907, upon application filed June 14, 1905, to Joseph Raskin, one of the defendants in this suit. Upon the record on this motion, the defendants do not deny infringement by the device operated at the time of the beginning of this action, and for which suit is brought. They express readi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ness to avoid infringement in future, and make the statement that they are no longer infringing. They rely upon alleged invalidity of the patent in suit and attack the complainant's title. It would appear that the complainant has acquired whatever interest it has in this and other patents as successor to a company which obtained by assignment certain rights from one J. W. Peelle, which rights have been augmented or perfected by the assignment of a one-third interest by his widow. Whether or not upon proof it may be shown that the complainant has not complete legal title need not be discussed here, because the allegation is to the effect that these assignments were properly executed and recorded so as to convey a complete title, and there is no evidence to show that they do not, beyond a denial of the conclusion.

As to the validity of the patent, it is shown by the papers that the patent was properly issued by the Patent Office. It was usual in form, and was granted upon an application complying in all respects with the law and the regulations of the Patent Office. In other words, it was valid upon its face and presumptively granted rights to a valid invention.

The complaint and answer set up the usual allegations for the patent and defenses against the patent, but, with one exception, none of these enter into this motion.

One of the defendants is the person who took out this and other patents while he was in the employment of the father of J. W. Peelle, or the company which that Mr. Peelle then managed. The other defendant is the inventor's wife, who is now conducting a business under the name of the New York Safety Fire Proof Door Company, of which her husband is the manager, and which actually installed the device as to which infringement has not been denied.

[1] The sole question beyond that of title is raised by the objection of the complainant to the availability of certain alleged facts, put forth by the defendants, with reference to the manner of obtaining the patent in question, and tending to show a use of the patented device some five years before the application. It seems to be undisputed that a door like the patented article was manufactured, sold, and put in use, and has been in continuous use since 1900, in New York City. The affidavits also tend to show that other doors were similarly installed more than two years prior to the application.

It appears that the defendant, who then understood little English, thought of taking out a patent, and consulted an attorney, who knew nothing of the prior installation, but who drafted a patent from a model and sketches; that C. M. Peelle, who subsequently acquired the right to use the patent by purchase, advised with the inventor and was a party to all steps actually leading up to the taking out of the patent; that the patent was used by Peelle's company, and subsequently, the Peelles and the inventor not agreeing about salary, the entire rights of the inventor in this and the other patents were purchased under contract, thus terminating all royalties. The inventor then for a short interval again went to work for the elder Peelle in another concern, and ultimately terminated that employment after the younger Peelle's death. He and his wife, the codefendant, have taken up the business of manufacturing this patented device, with

knowledge (of which the inventor at least was possessed before the time he finally sold his rights to Peelle's company) that his patent was invalid, and could not be successfully defended, in Peelle's opinion, against any one who brought up the prior use as a defense.

It may be assumed that, as in the case of real estate, the assignment of letters patent for a consideration, by an inventor will estop him from subsequently attacking the validity of the patent in the hands of the assignee. Onderdonk v. Fanning (C. C.) 4 Fed. 148; Underwood v. Warren (C. C.) 21 Fed. 573; American Paper Barrel Co. v. Laraway (C. C.) 28 Fed. 141; Rogers v. Riessner (C. C.) 30 Fed. 525; Adee v. Thomas (C. C.) 41 Fed. 342; National Conduit Mfg. Co. v. Connecticut Pipe Mfg. Co. (C. C.) 73 Fed. 491; Frank v. Bernard (C. C.) 131 Fed. 269; Walker on Patents, § 469, and cases cited.

As between Raskin and the Peelle Company, Raskin should not be allowed to set up as a defense invalidity of the patent which he applied for in good faith, unless he can show some reason for being freed from that estoppel.

Two suggestions or grounds for this action are presented: First, that Peelle himself knew of the invalidity of the patent, and that he was responsible for allowing the patent to be taken out; and, second, that both Peelle and Raskin knew or should have known or disclosed facts sufficient to have made it impossible for Raskin to take out the patent, and that, therefore, the complainant, standing in Peelle's shoes by assignment, has not a good title, and cannot come into equity with clean hands.

In Burdsall v. Curran (C. C.) 31 Fed. 919, estoppel of the patentee as against the assignee was further complicated with the question of a reissue, the person accepting an assignment of the reissued patent knowing that the new claims were void. In that case the original patentee was held estopped as to validity of the claims of the reissue. Even though the assignee had knowledge of the defect in the original patent before the reissue was obtained, the patentee and his successors could not set up invalidity in the reissued patents. This doctrine of estoppel arises from the position of the patentee who retains the proceeds of the assignment, and has caused the giving up of rights by the assignee for the assignment; or, in other words, is profiting by his own wrongdoing. Other innocent parties would not be estopped, even though they were aided by or received information from the patentee, but the successors in title to the assignee of such patent are entitled to claim estoppel as a defense against the patentee, and the patentee could not attack his own assignment by operating under the cloak of a corporation or individual who was his alter ego. Alvin Mfg. Co. v. Scharling (C. C.) 100 Fed. 87.

On the present record it would appear that Raskin has for several years had sufficient knowledge of English and of matters relating to patents to put upon him the responsibility of having assumed to hold out as valid a patent which he now says he had no right to obtain, and there seems to be ground for supposing that the elder Peelle knew that this patent or certain claims thereof might be invalid. In the present action we have only to do with the claims covering the device as to which infringement is not denied, and we can, therefore, dis-

regard whether any other and valid claims were included in this patent, or whether any of the patents assigned by Raskin were valid. The issue as to estoppel narrows down to the exact issue as to infringement and validity of the claims infringed. Nor does the question of prior art actually unknown to the patentee enter in here. The patentee is seeking to set up his own acts as ground for challenging validity, and the doctrine of estoppel surely applies thereto.

As was said in the leading case of Chambers v. Crichley, 33 Beav. 374, the defendant "sold and assigned that patent to the plaintiffs as a valid patent," and the question of validity, that is, the representation of validity, is made the basis of the estoppel. In the National Conduit Co. v. Connecticut Pipe Mfg. Co., supra, the injunction again is made to depend upon the element of misrepresentation on the faith of which the position of the assignee was changed.

In Ewart on Estoppel, p. 140, it is said:

"There will be no estoppel if, notwithstanding the existence of misrepresentation, the estoppel-asserter had knowledge of the truth"—[citing cases].

The defendant Joseph Raskin at the time of his final assignment, if not at the time of taking out the patent, had knowedge that in the complainant's opinion the claims of the patent in question were invalid because of long prior public use. He does not deny that these claims would thus be rendered invalid, nor does he deny that he understood, from the time that the point was called to his attention, how this invalidity could be shown. In the face of this he attempted to assign these claims for what they might be worth.

Although the complainant may not have a right to claim validity against an innocent party, there would seem to be no lack of equity in leaving the defendant Joseph Raskin in the position in which he placed himself, namely, of assigning something which he held out as valid, and not being allowed to say that he was free to infringe because he purposely perpetrated or attempted to perpetrate a fraud. The contract which Joseph Raskin entered into, restricting his further manufacture of elevator doors, even though it was incapable of enforcement, as seems to be admitted by both parties upon the argument, and the fact that many elements of unfair competition seem to enter into this case, do not alter the proposition that, if Joseph Raskin has no defense which can be urged by him to the cause of action presented, there is no reason why he should not be enjoined.

The complainant by its affidavits seems to have feared the installation by the defendants of what are called Peelle Safety Doors under architect's specifications. Into this the element of unfair competition enters, and such devices do not seem to depend alone upon the claims involved in this patent. The statement of the defendants that they have ceased to manufacture the doors in question, and the fact that the doctrine of estoppel is brought up, not by way of demurrer or replication and on preliminary injunction, instead of final hearing, makes the action of the court almost academic, as all of the questions of fact are left uncontradicted, and a question of law is presented which may determine nothing as to the final decision.

[2] As to the defendant Tillie Raskin, she seems to have been no

party to any of the transactions. She is now competent to conduct business, and if she has the right to manufacture the doors in question, she would have the right to attack the validity of the patent, and upon the showing made it would seem that even if an injunction as to her may ultimately be obtained, yet on the present record it must be denied. This, of course, would carry with it her right to operate the business conducted under the name of the New York Safety Fire Proof Door Company. But her husband should be enjoined from personally committing any further acts of the sort previously considered and herein admitted to be infringements as an individual or as manager of the business, if it be conducted by him in his wife's name. He is not in a position to object to the doctrine of estoppel being urged against him, and the attitude of the defendants is such that an alleged cessation from infringing acts does not remove the necessity for injunction against the patentee. The defendants are evidently solvent, but their financial responsibility is not so great as to make the certainty of collecting any damages which may be recovered an adequate remedy without the interposition of equity.

Hence a decree enjoining Joseph Raskin from individual infringement by his own acts or through his own agents may be entered.