CROSS PAPER FEEDER CO. v. UNITED PRINTING MACHINERY CO.

(District Court, D. Massachusetts. February 2, 1915.)

No. 543.

1. PATENTS ⌸328—INFRINGEMENT—PAPER-FEEDING MECHANISM.

The Briggs patent, No. 609,954, relating to mechanism for feeding sheets of paper, one at a time, into a printing press, claim 10, which covers in combination with the feed-table a comb-wheel to advance the top sheet of a pile to the feeding-rolls, and a presser-foot to prevent the underlying sheets from being dragged forward during the action of the feeding-rolls, such devices being raised and lowered alternately, is not limited to a construction by which such movements are simultaneous, but is entitled to a broader construction as to the time of the respective movements. As so construed, *held* infringed.

2. PATENTS ⌸328—INFRINGEMENT—PAPER-FEEDING MECHANISM.

The White patent, No. 659,907, for a sheet-feeding mechanism for printing presses, for throwing the feeding and separating devices out of action, which is controlled by the action of the sheets, *held* infringed.

3. PATENTS ⌸202—SUIT FOR INFRINGEMENT AGAINST ASSIGNOR—ESTOPPEL.

The assignor of a patent is estopped to say that it is void for anticipation, or want of novelty or utility; and while he may, in a suit against him for its infringement, show the state of the art to limit its scope, he may not introduce evidence ostensibly for that purpose, but which in fact tends to show that the patent is invalid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–289; Dec. Dig. ⌸202.]

In Equity. Suit by the Cross Paper Feeder Company against the United Printing Machinery Company. On final hearing. Decree for complainant.

Benjamin Phillips, George E. Stebbins, and Alfred H. Hildreth, all of Boston, Mass., for plaintiff.

J. Sidney Stone, of Boston, Mass., and Edmonds & Peck, of New York City, for defendant.

HALE, District Judge. This suit in equity is brought for the infringement of two letters patent—the Briggs patent, No. 609,954, granted August 30, 1898, and the White patent, No. 659,907, granted October 16, 1900. The complainant acquired these patents from the defendant by assignment dated August 16, 1911.

The present suit relates to the subject of paper-feeding machines, or sheet feeders for feeding sheets of paper in rapid succession, and one at a time, into printing presses. The offending device is alleged to be a paper-feeding machine embodying the principles of both patents at issue.

[1] Claim 10 of the Briggs patent is put in issue. This claim is directed to the comb-wheel, the presser-foot, and mechanism for alternating raising and lowering. The claim is as follows:

"10. The combination with the feed-table of a comb-wheel, mechanism whereby said wheel is alternately lowered upon the bank of paper and raised therefrom, a presser-foot, and mechanism whereby said foot is lowered to hold the bank of paper when the comb-wheel is elevated, and raised to release the top sheet when the comb-wheel is lowered, substantially as set forth."

It will be seen that the elements of this claim are: (1) The feed-table; (2) a comb-wheel; (3) mechanism whereby the wheel is alternately lowered upon the bank of paper and raised therefrom; (4) a presser-foot; (5) mechanism whereby the presser-foot is lowered to hold the bank of paper when the comb-wheel is elevated, and raised to release the top sheet when the comb-wheel is lowered.

In this suit, paper-feeding machines of the continuous type are brought before the court. In this continuous type of machine two requirements are found: First, that a single sheet shall be separated from the supply; and, second, that such sheet shall be fed into the printing press at exactly the right time in the operation of the press. In the machines before the court, the comb-wheel is the characteristic element of the sheet-separating mechanism. This wheel consists of a rotating wheel having anti-friction rolls at its periphery, which are brought in contact with the pile of paper, and which act to comb out, or fan out, the sheets of paper, advancing the topmost sheet the greatest distance, and advancing each successive and underlying sheet a successively lesser distance. These comb-wheels are rotating continuously, and are thrown into and out of action by being lowered upon and raised from the bank of paper.

The specification starts out with this description:

"This invention relates to sheet paper feeders of that class in which the pile or bank of sheets is feathered or combed out and the sheets are fed successively from the top of the pile by one or more rotary comb-wheels. The rotary movement of these wheels, when it is intermittent, has been started and stopped by electrical devices; and the comb-wheels have been lowered upon and raised from the bank of sheets by electrical devices. One of the objects of my invention is to provide a sheet-separating mechanism of this character which is controlled solely by mechanical means."

It will be seen that the device relates to providing mechanical means for what has formerly been done by electrical devices. The comb-wheel operates mechanically to separate and advance the top sheet to a predetermined position, from whence it will be fed into the printing press at the proper time. The feeding devices consist in general of an upper feed roll, and a lower feed roll, one of which is constantly rotated; in fact, both may be constantly rotated. They are held apart until the proper time for the forwarding of the sheet to the printing press. At this time the rolls are brought together, to seize and forward the sheet of paper which has previously been separated and advanced by the comb-wheel from the bank of paper to a predetermined position, with its front edge between the forwarding rolls. The comb-wheel and the forwarding rolls are arranged to operate alternately; the comb-wheel combs out the top sheet until it is in proper position between the forwarding rolls; then this comb-wheel is raised from the bank of paper and goes out of action, leaving the sheet, with its front edge between the separated forwarding rolls; the rolls are then brought together, to forward the sheet into the press, while the comb-wheel is elevated and out of action. After the forwarding rolls have completed this operation, the top forwarding roller is raised and the comb-wheel is lowered upon the bank of paper, to comb out the next sheet, in preparation for its being forwarded into the ma-

chine. It will be seen that the forwarding rolls are separated, and so are inoperative, at the time the comb-wheel is lowered upon the paper and in action, and that, when the forwarding rolls are brought together and are in action, the comb-wheel is raised from the paper and out of action. The action of the presser-foot is explained by the complainant substantially as follows: In order to prevent the top sheet, when it is forwarded into the press, from drawing along with it by friction the second sheet, and perhaps other underlying sheets, the machine is provided with a presser-foot, or tail-clamp, as it is sometimes called, which is arranged to press upon the bank of paper in the rear of the top sheet when the comb-wheel is in its raised position, and thus hold the second and underlying sheets securely in position, and prevent the pile from being displaced, while the top sheet is being carried off the pile by the forwarding rolls. The presser-foot is intended to operate substantially with the feed-rolls and alternately with the comb-wheel; the presser-foot being in action when the forwarding rolls are operating, and the comb-wheel is raised and out of action, and being raised, out of action, when the forwarding rolls are separated and out of action and the comb-wheel is lowered and in action. This combination of comb-wheel and presser-foot forms the subject-matter of the single claim at issue. It is pointed out, too, that in the mechanism illustrated in the Briggs patent, the devices for raising and lowering alternately the comb-wheel and presser-foot are largely the same. One range of movement, however, actuates the comb-wheel, and another range of movement actuates the presser-foot; so that, while it is one mechanism which raises and lowers the comb-wheel, and also lowers and raises the presser-foot, it is a different portion of the movement which effects one result from that which effects the other result, namely, it is a different portion of the movement of the shifting arm which raises and lowers the comb-wheel from that which raises and lowers the presser-foot. While the arm is raising and lowering the comb-wheel, it has no effect upon the presser-foot; and while it is raising and lowering the presser-foot, it has no effect upon the comb-wheel. And it is pointed out, too, that in the construction illustrated in the Briggs patent both the comb-wheel and the presser-foot have a double function: The first function of the comb-wheel is to comb; the first function of the presser-foot is to press. The second and subordinate function of the comb-wheel is to act as an abutment in connection with the raising and lowering of the presser-foot; the second and subordinate function of the presser-foot is to act as an abutment in connection with the raising and lowering of the comb-wheel; and these abutment functions are entirely distinct from the combing and pressing functions of these parts, these latter functions being the only functions involved in claim 10.

Mr. Livermore, the complainant's expert, points out:

"The period of action for the comb-wheels should be during the period of inaction for the forwarding devices; and the period of action for the tail clamp should be during the period of action of the forwarding devices. Thus the periods of action of the comb-wheels and tail-clamp alternate with one another; the period of action for the comb-wheels being when the tail-clamp

is raised from the bank and out of action, while the period of action for the tail-clamp is while the comb-wheels are raised and out of action. It is immaterial whether one of these devices comes into action at the same instant that the other goes out of action, or a little before, or a little after. For practical purposes, it is necessary only that the action of the comb-wheels should be terminated before the action of the forwarding devices begins, and that the action of the tail-clamp should begin before the action of the forwarding operation."

The specification makes it clear that the presser-foot is for the purpose of holding the pile of sheets from displacement while the top sheet is being carried off from the pile by the feed-rollers.

It is contended that there is no limitation in the claim in suit which requires the presser-foot to be lowered the instant the comb-wheel is lifted, and not to be raised until the instant the comb-wheel is lowered; that the language of the claim shows the intention of the inventor not to limit himself to the exact and particular timing of the specific form of devices illustrated in the patent—the language being intended to cover any combination of comb-wheel and presser-foot alternately raised from and lowered upon the bank of paper, the presser-foot resting upon the paper at the proper time when the comb-wheel is in a raised position to prevent displacement of the pile when the top sheet is being carried away by the forwarding rolls, and being raised to release the paper when the comb-wheel is in a lowered position to permit the comb-wheel to comb out the advancing top sheet; that the claim recites, as separate elements, the mechanism for raising and lowering the comb-wheel, and the mechanism for raising and lowering the presser-foot; that this tends to show the intent of the patentee to cover the combination of alternately raising and lowering the comb-wheel and presser-foot, even when both comb-wheel and presser-foot are raised and lowered by entirely separate mechanisms, although in the specific construction illustrated in the drawings both mechanisms are embodied in the same device; and that, when viewed in the light of the specification, claim 10 was intended to broadly cover the combination of comb-wheel and presser-foot, alternately raised from and lowered upon the bank of paper, the presser-foot resting upon the bank of paper at the time when the comb-wheel is in a raised position, to prevent displacement of the pile of sheets when the top sheet is being carried away by the forwarding rollers, the presser-foot being raised, to release the paper, when the comb-wheel is in lowered position, to permit the comb-wheel to comb out and advance the top sheet. The learned counsel for the complainant urges, too, that prior to the purchase of the patents by the complainant, before the assignment of them to the complainant, the attorneys for the defendant correctly represented that the claim was a broad one; at that time taking the same view of the scope of the patent which is now taken by the complainant.

The contention of the defendant is that claim 10 is not a broad claim; that it must be limited to a combination of the feed-table and the comb-wheel, to mechanism whereby the wheel is alternately lowered upon the bank of paper and raised therefrom, to a presser-foot, and mechanism whereby the foot is lowered to hold the bank of paper *before* the

comb-wheel is lifted, and raised to release the top sheet *after* the comb-wheel is lowered, substantially as set forth.

The defendant contends that the distinctive characteristic of the patented device is in the construction, location, and resulting capacity of both comb-wheel and presser-foot to operate side by side, in joint and co-operative relationship in accomplishing their respective functions; that the capacity of the comb-wheel and presser-foot to thus act, in a direct and pistonlike fashion, side by side, upon the margin of the sheets, remote from the following rollers, is novel, though not of any practical utility; and that such action is assumed throughout the specification, and is distinctly pointed out in claim 9 of the patent although that claim is not involved in this controversy. The defendant points out that the prior art shows all the elements utilized by Briggs to have been structurally and functionally old and well known. I do not find it necessary, in passing upon this patent, to consider in detail the several patents cited in the prior art as limiting the scope of the claim. No one of the patents brought to my attention shows the broad construction of an alternately raised and lowered comb-wheel and presser-foot shown in the claim at issue. I think the patentability of the claim rests broadly on this combination, and is in no way dependent upon the form of the elements. I find nothing in the prior art which defeats the broad claim contended for by the complainant.

In the matter of infringement, the defendant insists that the Briggs invention must be construed and limited to the specific devices shown; that the comb-wheel and the presser-foot must be elevated and lowered by substantially the same mechanism, both being substantially adjacent to the other, and both bearing upon the same portion of the bank of paper; that the claim must be limited also by interpretation to an alternate movement at intervals which occur regularly, such movements being of equal duration, the bank of paper affording an abutment whereon both comb-wheel and presser-foot must rest while shifting the comb-wheel and presser-foot alternately into an operative position; that, although this feature is not expressly included in the language of claim 10, it is to be inferred from the whole claim, and especially that it must result by implication from the final words "as substantially set forth."

An examination of the defendant's machine shows that it has a continuously rotating comb-wheel, consisting of a wheel provided with a plurality of anti-friction rollers mounted on its periphery; it has mechanism whereby the wheel is alternately lowered upon the bank of paper and raised therefrom; it has a presser-foot; it has mechanism whereby the foot is lowered to hold the bank of paper when the comb-wheel is lifted, and raised to release the top sheet when the comb-wheel is lowered.

It is principally with regard to this last-named element that the defendant bases its contention of non-infringement of claim 10. The learned counsel for the defendant maintains that, although the defendant's machine has mechanism for alternately raising and lowering the presser-foot, the foot is not lowered "when the comb-wheel is elevated," and is not raised "when the comb-wheel is lowered." He in-

sists that the timing of the movements of the presser-foot in the defendant's machine is not as defined in the claim, and that therefore the machine does not infringe the claim at issue.

The complainant maintains that the mechanism in the defendant's machine comes distinctly within claim 10. It will be seen that the defendant's expert, Mr. Jarvis, says substantially that the presser-foot is lowered and rests upon the paper only when the comb-wheel is raised and out of contact with the paper, and is raised and out of contact with the paper during the entire period when the comb-wheel is lowered and rests upon the paper; and the complainant points out that it is obvious that claim 10 cannot be limited to the simultaneous lowering of the presser-foot and elevating of the comb-wheel, and of the simultaneous raising of the presser-foot and lowering of the comb-wheel. Such construction of the claim would exclude the specific mechanism shown in the Briggs patent, for in that mechanism the movements of the presser-foot and comb-wheel are successive, and not simultaneous; and there is nothing in the claim which requires any particular order of movement.

In his affidavit, Mr. Jarvis says:

"Simultaneous engagement of both wheel and foot with the bank of sheets in the cycle of operations is absolutely essential to the working of the Briggs feeder; and in the fifth element of claim 10 the phrases 'when the comb-wheel is elevated' should properly read 'BEFORE the comb-wheel is elevated,' and 'when the comb-wheel is lowered' should properly read 'AFTER the comb-wheel is lowered.' Therefore claim 10, to embody an operative structure, should read:

" '10. The combination with the feed-table, of a comb-wheel, mechanism whereby said wheel is alternately lowered upon the bank of paper and raised therefrom, a presser-foot, and mechanism whereby said foot is lowered to hold the bank of paper *before* the comb-wheel is elevated, and raised to release the top sheet *after* the comb-wheel is lowered, substantially as set forth.'

"The foregoing describes an operative sheet feeder as shown and described in the Briggs patent."

Claim 10, however, does not employ the language urged by Mr. Jarvis; and I think this tends to show that the inventor intended not to limit his claim to any such timing of the parts.

I think the claim at issue is entitled to a broader interpretation than that contended for by the defendant. I find nothing in the claim which requires the specific succession of alternate movements of the presser-foot and comb-wheel. The particular order of the presser-foot is incidental to the specific construction of the presser-foot and comb-wheel, and their location side by side, so that each may serve as an abutment for raising and lowering the other. It is not essential that the presser-foot and comb-wheel should be side by side; in fact, in the complainant's operating machine, such adjacency is not shown. In regard to the essential function of these parts of the claim, the combing function of the comb-wheel and the pressing function of the presser-foot, I think it is true, as Mr. Livermore has pointed out, that it is of no importance whether the one device is raised from the bank of paper shortly before or shortly after the other is lowered upon it. The material thing is that the presser-foot shall be raised to release the top sheet when the comb-wheel rests on the bank of paper

and is performing its combing operation, and that the presser-foot shall rest on the bank of paper in the rear of the top sheet, to hold the bank from displacement while the top sheet is being carried away by the forwarding rollers; this action taking place while the comb-wheel is held in its raised position.

Comparing the specification of this patent with that of the Garner patent, I find that, in the Briggs specification, by means of the presser-foot pressure is applied to the pile in the rear of the top sheet when the comb-wheels are raised, thereby preventing the pile of sheets from being displaced while the top sheet is being carried off from the pile by the feed-rollers.

In the Garner patent, which defendant relies on, the defendant's expert, Mr. Jarvis, says:

"The cycle of operations of the combing-roll and clamp with reference to their respective lowering to and lifting from the bank of sheets, coupled with means for feeding forward the bank as a whole 'just before the combing-wheels act,' is accurately described in the amendments. * * * The pile drag serves to tighten or compress the bank of sheets, while the combing wheels act on the top sheets; whereas the clamp devices serve to hold rigidly in position all the sheets constituting the bank except the top sheet, which is being forwarded by the withdrawing devices."

It is clear that substantially the same purpose is pointed out in the two specifications.

With reference to the timing of the two devices, I find that the Briggs patent shows an instant in which both the comb-wheel and the presser-foot are simultaneously *on* the bank of paper; in the defendant's machine there is an instant when both the comb-wheel and the presser-foot are simultaneously *off* the bank of paper. The function of the presser-foot is the same in both machines.

I am of the opinion that the defendant's machine is not materially different from the Briggs machine. I find nothing in the file wrapper which requires discussion.

I am of the opinion that the defendant's machine infringes claim 10 of the Briggs patent. Having come to this conclusion, it is not necessary to consider the question of estoppel raised by the complainant.

[2] With reference to the White patent, it is contended that defendant's machine infringes claims 1, 2, 3, 4, 6, 9, 21, 22, and 23. Claim 1 reads as follows:

"1. In a sheet feeder, the combination of a sheet-feeding device, means for throwing said device into action, a latching device for holding said feeding device in action, and mechanical devices for controlling said latching device by the sheet."

These elements are involved in this claim:
(1) A sheet-feeding device.
(2) Means for throwing the device into action.
(3) A latching device for holding the feeding device in action.
(4) Mechanical devices for controlling the latching device by a sheet.

In the specific mechanism presented, these details are pointed out by the complainant as constituting the four elements named in the claim:

(1) The sheet-feeding device is a comb-wheel.

(2) The means for throwing the device into action consists of a cam, a cam roll and slide, and connections between the slide and the comb-wheel shaft, including the rock shaft and toggle arms, which, when actuated by the cam, lower the comb-wheel upon the bank of paper where it rests under the action of gravity.

(3) A latching device for holding the feeding device in action is a lever, and the devices and connections between the lever and the arm, including a stop lever, shaft, rod, and rock-shaft.

(4) The mechanical devices for controlling the latching devices by the sheet consist of a trip lever, the lower end of which is in position to be engaged and actuated by the front edge of the sheet, thus to release, or trip, the arm.

This claim is intended to cover broadly the combination of these four elements. Other claims in issue present different details. I think the questions before the court may be discussed with reference to claim 1. The specification shows the inventor's object "to provide simple and efficient mechanical devices for throwing the feeding and separating devices out of action, which mechanism is controlled by the action of the sheets." The patentee refers to another patent "where electrical devices are employed for throwing the combing devices out of action." The specification points out that these electrical devices are liable to derangement, but that in the present invention "the action of the combers, or other separating or feeding devices, is controlled by purely mechanical devices which do not easily get out of order."

[3] Several patents are cited by the defendant, in the prior art, tending to limit the scope of the claims in issue in the White patent. I find that no one of them discloses the broad combination of comb-wheel, latch, and mechanical tripping device. The only exception to this is found in the Imray British patent. In respect to this patent the complainant says, if it discloses an operative machine, and if the wheel is a comb-wheel, it anticipates clearly every claim in the White patent. The defendant denies this, and says it merely *limits* the White patent. It will be found that the Imray patent shows the combination of comb-wheel, latch, and mechanical tripping devices. It appears to me to have in it all that is patentable in the White patent.

It is well settled that the assignor of a patent is estopped to say that his patent is void for want of novelty or utility, or because anticipated by prior inventions. He may deny infringement; he may show the state of the art, to limit the scope of the patent which he has assigned; but he cannot introduce testimony invalidating the assigned patent. Noonan v. Chester Park Athletic·Club, 99 Fed. 90, 39 C. C. A. 426; Smith v. Ridgely, 103·Fed. 876, 43 C. C. A. 365; Adee v. Thomas (C. C.) 41 Fed. 342. It is settled, too, that the inventor who has assigned the patent for his invention cannot be permitted, in a suit against him for its infringement, to introduce evidence for the ostensible purpose of so narrowing the scope of the patent as to avoid infringement, but which in fact tends to show that it is invalid for want of novelty. Alvin Mfg. Co. v. Scharling (C. C.) 100 Fed. 87.

In the case at bar the defendant, the assignor of the White patent in suit, is, I think, estopped to say that this patent is anticipated by the Imray patent.

The defendant contends that it does not infringe the White patent, because in defendant's feeder the latch performs no function in holding the comb-wheel in action, and that this is the essential and persistent element in each of the claims in issue. The learned counsel for the defendant contends that the defendant's latch serves solely to hold, and afterwards to release, a pawl to engage the ratcheted swinging arm *after* the comb-wheel has performed its function, thereby putting other mechanism into relative contact with the comb-wheel mechanism by which, through the continuing operation of the feeder as a whole, the comb-wheel is lifted out of operative contact with the sheets. He urges that gravity alone keeps the comb-wheel in action in the defendant's feeder, while in the White device gravity plus a positive latching device holds the comber in action; that the White patent inserts a strained spring in the feeder, *always* acting to throw the comb-wheel out of action; while the defendant's feeder omits any such latching device for holding the comb-wheel in action. He insists, then, that in the defendant's device the third specific element is omitted, namely, "a latching device for holding the feeding device in action."

The complainant contends that the White patent clearly does not intend to limit the method of throwing the comb-wheel out of action to means of a directly acting spring; that such means are found in the defendant's machine in the lifting foot, the spring-pressed pawl, and the mechanism interposed between these two parts; that this throwing-out mechanism is ready to operate as soon as restraint on the pawl is removed; that it is immaterial, so far as infringement is concerned, that in the machine of the White patent the comb-wheel is thrown out of operation by the action of a previously compressed spring, while in the defendant's machine the power required to raise the comb-wheel is applied after the latch has been tripped; that in each case the comb-wheel is automatically raised by power derived from the machine. The defendant's machine is quite complicated. At the hearing I found the aid of the experts to be of great interest and of value in examination of the machines. I have not entered into a detailed description of the machines. I do not find this necessary, in order to decide the precise issue raised in this controversy. The defendant's machine appears to be like that of the White patent, in that the comb-wheel rests on the bank of paper by gravity, and is free to be lifted off the paper at all times. I do not find in either machine that there is any positive holding or pressing of the comb-wheel against the bank of paper to maintain it in action. I find in both machines devices which naturally tend to throw the comb-wheel out of action, and that these devices are restrained and held from operating by means of a latching device. In the defendant's machine the tripping of the latch throws into operation certain devices which, through the movement of the machine, raise the comb-wheel out of action. In the White machine the tripping of the latch releases a spring which, by means of mechanism connected with it, at once raises the comb-wheel. I cannot

see that this difference is vital. Nothing in the claim in issue limits the means of throwing the comb-wheel out of action to those of a directly acting spring. It will be seen that some of the claims of the White patent refer to a spring. Claim 1 does not make such reference. It seems clear that the inventor does not intend to limit himself to a spring.

Giving the claims in issue the interpretation to which I think they are entitled, I find that the defendant's machine infringes the claims in issue of the White patent.

I find, then, that claim 10 of the Briggs patent is valid and infringed.

I find that claims 1, 2, 3, 4, 6, 9, 21, 22, and 23 of the White patent are valid and infringed.

Let a decree be drawn accordingly. The complainant recovers its costs.